CENTRAL REALTY, INC., ET AL. *v.* HILLMAN'S EQUIPMENT, INC.

[No. 469S75. Filed April 10, 1969.]

*Charles R. Tiede, Plummer Tiede Magley & Metz,* of Wabash, for appellant Central Realty, Inc.

*Robert S. McCain, Fay Leas,* both of Fort Wayne, for appellee.

JACKSON, J.—This case comes to us on petition to transfer. See *Hillman's Equipment, Inc.* v. *Central Realty, Inc.* (1968), 142 Ind. App. 485, 242 N. E. 2d 522.

Appellee, Hillman's Equipment, Inc., is the vendor of certain restaurant equipment sold to Terry Cooper for the purpose of equipping Terry's Restaurant, of which he was the proprietor. On June 22, 1965, Cooper purchased $20,-448.00 worth of restaurant equipment from appellee, which equipment was paid for out of the proceeds of a promissory note made by Cooper to First National and signed by Central Realty, Inc., as guarantor. Cooper also executed a security agreement with First National, the terms of which gave the bank a security interest in "All Restaurant Equipment and Fixtures now owned or hereafter acquired located at Terry's Restaurant." A financing statement covering the above mentioned equipment was duly and timely filed by the bank in the office of the Indiana Secretary of State on June 29, 1965.

From June 9, 1965, up to October 16, 1965, appellee delivered various other pieces of equipment to Cooper which were to be paid for in installments. To secure this equip-

ment, Cooper executed a security agreement to appellee which was dated "December ——, 1965," and which provided that the first installment payment due thereunder would be on January 10, 1966. Although bearing the date "December ——, 1965," appellee contends that the security agreement was not signed by Cooper until January 18, 1966, on which date appellee filed a financing statement in the office of the Recorder of Wabash County, Indiana, claiming a security interest in the restaurant equipment delivered from June 9 up to October 16, 1965. The financing statement provided that it was filed without the debtor's signature, and thus did not perfect a security interest in collateral.

Subsequently, Cooper being in default of rent payments and payments on the note, Central Realty, pursuant to provisions of its lease with Cooper, took possession of Terry's Restaurant on February 24, 1966, including all equipment and fixtures delivered by appellee to Cooper between June 9 and October 16, 1965. On April 13, 1966, First National formally assigned its security interest and rights in Terry's Restaurant to Central Realty. On April 18, 1966, Central Realty gave notice that it was selling at public sale on May 2, 1966, all of Cooper's equipment. On April 29, 1966, Cooper signed a document purporting to give to appellee "right, title and interest," and the "immediate possession" of the equipment delivered to Cooper between June 9, 1965, and October 16, 1965. Also on this date appellee filed a financing statement with the Secretary of State claiming a security interest in the property in question.

At trial, petitioners Central Realty, Inc., and First National Bank filed a motion for summary judgment, together with supporting affidavits. Appellee then filed its motion, including supporting affidavits, to deny summary judgment. On July 1, 1966, the trial court granted appellants' motion for summary judgment. After the trial court denied its motion for a new trial, appellee appealed to the Appellate Court. The Appellate Court in *Hillman Equipment, Inc.* v.

*Central Realty, Inc.* (1968), 142 Ind. App. 485, 242 N. E. 2d 522, reversed the trial court with instructions to enter summary judgment for appellee, and to determine the fair market value of the equipment at the time of the sale.

The Appellate Court framed its view of the issues presented by the case as follows:

> "May a secured party with a prior perfected security interest in equipment or other collateral, who has repossessed it, by agreement subordinate his security interest therein to a junior secured party who has not perfected his security interest by proper filing or other means as prescribed by the Uniform Commercial Code?" 242 N. E. 2d 522, 525.

The Court then held that there may be such subordination, and concluded from the affidavits in support of the motions made at trial that appellants were estopped from denying a subordination agreement with appellee. Quoting again from the opinion of the Appellate Court:

> "The evidence is clear that a controversy existed as to the presence of the subordination agreement or estoppel. It is the opinion of this court that all of the evidence offered for the purpose of granting a summary judgment clearly established that the security interest of the appellant should take priority." 242 N. E. 2d 522, 526.

To arrive at its conclusion that a subordination agreement arose by operation of estoppel, it was necessary for the Appellate Court to review the evidence contained in the record, weigh that evidence, and arrive at a conclusion of fact; namely, that appellants, by their conduct, are estopped from denying the existence of a subordination agreement with appellee. We point out that this case was before the Appellate Court as an appeal from a ruling of the trial court granting appellants' motion for summary judgment.

Our statute on summary judgment, Ind. Ann. Stat. § 2-2524(c), (1968 Repl.) provides:

"(c) Motion and Proceedings Thereon. The motion shall be served at least ten (10) days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, *show that there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be entered on the issue of liability alone although there is a genuine issue as to the amount of damages."

In *Kapusta* v. *DePuy Manufacturing Co.* (1968), 249 Ind. 679, 234 N. E. 2d 487, this Court considered the question of whether failure of the adverse party to file counter affidavits would automatically result in the granting of summary judgment for the moving party. This Court, in construing the words "if appropriate" in Ind. Ann. Stat. § 2-2524 (e) stated:

"We construe the words 'if appropriate' in subsection (e), in light of subsection (c) *to still require a finding that there is no genuine issue as to any material fact,* whether or not counter-affidavits are filed." (Emphasis added) 234 N. E. 2d 487, 488.

Ind. Ann. Stat. § 2-2524 (c) was patterned after, and is identical to Rule 56 (c) of the Federal Rules of Civil Procedure. In *Fountain* v. *Filson* (1949), 336 U. S. 681, the Supreme Court of the United States was confronted with issues strikingly similar to those at bar. In that case the District Court for the District of Columbia granted the appellant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The Court of Appeals for the District of Columbia reversed and remanded the case to the District Court with instructions to enter a personal judgment for the appellees, the non-moving party. The ruling of the Court of Appeals was based in part upon factual conclusions drawn from the depositions and affidavits offered in support and in opposition to the motion

for summary judgment. In reversing the Court of Appeals the Supreme Court said:

> "We need not pass on the propriety of an order for summary judgment by a district court in favor of one party after the opposite party has moved for summary judgment in its favor, where it appears that there is no dispute as to any fact material to the issue being litigated. For here the order was made on appeal on a new issue as to which the opposite party had no opportunity to present a defense before the trial court." 336 U. S. 682.

The Supreme Court went on to say:

> "Summary judgment may be given, under Rule 56, *only if there is no dispute as to any material fact.* There was no occasion in the trial court for Mrs. Fountain to dispute the facts material to a claim that a personal obligation existed, since the only claim considered by that court on her motion for summary judgment was the claim that there was a resulting trust. When the Court of Appeals concluded that the trial court should have considered a claim for personal judgment it was error for it to deprive Mrs. Fountain of an opportunity to dispute the facts material to that claim by ordering summary judgment against her." 336 U. S. 683.

Although we are not bound by the determination of the Supreme Court in *Fountain* v. *Filson, supra,* it nonetheless offers authoritative guidance in the case at bar.

Thus, it is clear from both Indiana and Federal authorities that summary judgment under § 2-2524, *supra,* and its identical counterpart, Rule 56, cannot be granted where there exists a genuine issue as to a material fact.

That there were present in the case at bar genuine issues as to material facts is clear from a review of the record. The Appellate Court concluded on the basis of the evidence contained in the record that there was a subordination agreement, and that appellants are estopped from denying its existence. Such a finding could have only derived from a review

of the pre-trial depositions of two officers of Central Realty, Inc., Richard L. Miller and Kenneth L. Clark.

Miller was vice president and a director of Central Realty. In his deposition he testified that he was acquainted with one of appellee's salesmen, George Adkinson, and that he had spoken with him on a number of occasions about sales of equipment to Terry Cooper, d/b/a Terry's Restaurant. He also testified that he spoke with Adkinson on several occasions after Central Realty took possession of Terry's Restaurant. Miller stated that he had told Adkinson not to worry about the equipment, and that Central Realty would not keep the equipment. There is also some evidence in Miller's deposition that the board of Central Realty, at a board meeting, told Adkinson not to worry about the equipment, and that Central Realty would not sell it. However, Miller also states that some of the questions put to him during direct examination involved statements taken out of context, and only parts of conversations by the various individuals were picked out and presented. Thus, not all that transpired at the meeting concerning the disposition of the equipment is presented in Miller's deposition. Therefore, what actually transpired at the meeting remains a question of fact which has yet to be answered.

Further, Miller's deposition does not establish the extent to which Adkinson relied upon the statements made to him by Miller, and whether the statements were made with some qualifications. For example, Miller's deposition alludes to a conversation he had with Adkinson at which both agreed that they should ascertain their legal rights in the matter before doing anything. Miller's deposition also reveals that the board of Central Realty decided to ascertain its legal rights before proceeding. Therefore, there remains the material factual question of whether the statements made to Adkinson by both Miller and the Board were conditioned upon a determination of their legal rights, and whether Adkinson was aware of the conditional nature of the statements.

There is a further factual question concerning Miller's authority to bind the corporation, Central Realty, by his statements to third parties. In regard to certain statements that he allegedly made to Adkinson, Miller gave the following answers to the following questions:

"Q. Were you speaking now for and on behalf of the Board?
A. I was speaking my own opinion, sir.
Q. But weren't you speaking as Vice President?
A. Well, I probably was, yes, but it's hard to sell seven men sometimes on a lot of things."

It is obvious from the above passage of Miller's deposition that he is not certain as to whether he was speaking to Adkinson as an agent of Central Realty, or as an individual speaking his own opinion. Moreover, the manner in which Adkinson received Miller's statements, whether he interpreted them as merely Miller's personal opinion or as representations by Central Realty, remains an undecided question of material fact. It is a material question of fact of the obvious reason that mere personal opinions of an individual, which are known to be mere personal opinions, cannot bind the corporation. Therefore, since there is a genuine issue as to the material fact of whether or not Miller was speaking in his capacity as vice president and director of Central Realty, or as an individual, and whether Adkinson understood that Miller was speaking in his corporate capacity or as an individual, summary judgment cannot be granted under § 2-2524 (c), *supra*, which clearly provides that there must be " . . . no genuine issue as to any material fact."

Turning to the deposition of Kenneth L. Clark, president and a director of Central Realty, we find other statements bearing on the question of whether Miller had authority to speak to Adkinson on behalf of the board of Central Realty. The following exchange is taken from page 93 of the transcript:

"Q. You heard Mr. Dick Miller testify here as to certain things that progressed through the days from June 22 down to even the time of the seizure of this property, is that right?

A. I was here.

Q. And even down to the day of the sale?

A. Well, I heard him but then I wasn't with him all the time through all this talking.

Q. Did he at that time have power and authority to speak for the Board, to speak for the corporation to George Atkinson (sic)?

A. No, sir.

Q. Had that ever been discussed with you or any of the Board?

A. It was standard procedure that no one had any authority to do anything unless the Board acted on it."

The above passage clearly indicates a conflict in the evidence as to whether Miller had the authority and capacity to bind the corporation, and if, in fact, his statements should have bound the corporation. However, such a conflict cannot be resolved in a proceeding on a motion for a summary judgment. So long as there is a "genuine issue as to any material fact" Ind. Ann. Stat. § 2-2524 (c), *supra,* precludes the granting of summary judgment.

Although the material presented in the supporting affidavits may be extremely persuasive and entitled to great weight in arriving at conclusions of fact, the mere persuasiveness of the material does not erase the existence of factual issues which can only be decided by weighing evidence and drawing conclusions of fact. In short, although one supporting affidavit may be more persuasive than another, mere persuasiveness does not destroy the existence of a factual controversy. It is only when the supporting affidavits clearly establish that there is no controversy as to any material fact that summary judgment can be granted. Ind. Ann. Stat. § 2-2524 (c), *supra; Kapusta* v. *DePuy Mfg. Co., supra; Fountain* v. *Filson, supra.*

Summary judgment cannot be granted, however, when it is necessary to weigh the evidence contained in the supporting affidavits, draw conclusions of fact from that evidence, and thereby determine a preponderance of the evidence. In ruling on motions for summary judgment, the court may not decide questions of fact, but is limited to the sole determination of whether or not a factual controversy exists. In short, summary judgment is not a procedure for trying facts and determining the preponderance of the evidence. Rather, it is a procedure for applying the law to the facts when no factual controversy exists.

In the case at bar it is clear that the Appellate Court found it necessary to weigh the evidence and determine its preponderance in arriving at its conclusion that there was a subordination agreement between appellee and Central Realty, the existence of which Central Realty was estopped from denying. Since the judgment of the Appellate Court involved a weighing of the evidence and a determination of its preponderance, the judgment of the Appellate Court must be reversed. The judgment of the Appellate Court must be reversed for the further reason that the decision of that Court was based on an issue as to which the appellants had no opportunity to defend. *Fountain* v. *Filson, supra.* Finally, the presence of factual controversies also necessitates reversing the judgment of the trial court.

Accordingly, petition to transfer is granted, and the judgments of both the Appellate Court and the trial court are hereby reversed with instructions to grant appellee's motion for a new trial.

DeBruler, C.J., Hunter and Givan, JJ., concur.

Arterburn, J., concurs in result.

NOTE.—Reported in 246 N. E. 2d 383.