HILLMAN'S EQUIPMENT, INC. *v.* CENTRAL REALTY, INC., ET AL.

[No. 20,708. Filed December 16, 1968. Rehearing denied January 9, 1969. Transfer granted April 10, 1969.]

*Robert S. McCain, Fay Leas,* Fort Wayne, for appellant.

*Charles R. Tiede, Plummer Tiede Magley & Metz,* Wabash, for appellees.

PFAFF, J.—Upon the appellant's petition for a rehearing of this cause the court has reconsidered its decision of April 10, 1968, 235 N. E. 2d 496, 13 Ind. Dec. 705, 142 Ind. App. 485, and now supersedes the same as follows:

This is an action brought by the appellant, Hillman's Equipment, Inc., against the appellees, Central Realty, Inc., (hereinafter referred to as "Central"), The First National Bank in Wabash (hereinafter referred to as "First National"), Terry E. Cooper, Kay Cooper and Terry E. Cooper, d/b/a Terry's Restaurant (hereinafter referred to as "Cooper"), for replevin and conversion of certain restaurant equipment. The appellees Central and First National filed a motion for summary judgment. Appellant subsequently filed its motion to deny the summary judgment, with supporting affidavits. On July 1, 1966, the court granted said appellees' motion for summary judgment and entered its judgment accordingly.

Appellant then filed a motion for new trial, which was overruled on November 15, 1966, and now assigns as error the overruling of said motion.

The evidence reveals the following with respect to the case at bar:

*March 20, 1965.* Cooper, as lessee, and Central, as lessor, entered into a lease agreement for a restaurant at Central Shoppers Mart, 1146 North Cass Street, Wabash, Indiana, which lease, in part, provides: "In addition to other rights hereunder LESSEE hereby gives and grants to LESSOR a lien against inventory and fixtures of LESSEE to secure the payment of the obligations of LESSEE hereunder."

*June 9, 1965.* Cooper placed an order for more restaurant equipment with the appellant. This equipment, which is the subject matter of this dispute, was delivered at different times between June 9, 1965, and October 16, 1965.

*June 22, 1965.* Cooper purchased $20,448.00 worth of restaurant equipment from appellant for which appellant was paid in full from the proceeds of a promissory note made by Cooper to First National. Payment of this note was guaranteed by Central. Cooper executed a security agreement with First National, the terms of which gave First National a security interest in "All Restaurant Equipment and Fixtures now owned, or hereafter acquired, located at Terry's Restaurant, 1146 North Cass Street, Central Shoppers Mart, Highway 15 North, Wabash, Indiana", and authorized First National to file a financing statement covering such security interest.

*June 29, 1965.* First National, as secured party, filed a financing statement in the Office of the Indiana Secretary of State, identifying Cooper as the debtor, which financing statement covered "All Restaurant Equipment and Fixtures now owned, or hereafter acquired, located at Terry's Restaurant".

*December 10, 1965.* Cooper executed a security agreement to appellant covering all of the restaurant equipment which was placed in Cooper's possession from June 9, 1965, up to October 16, 1965. The security agreement bears the date "Dec. ——, 1965" and further provides that the first installment payment thereunder is due "January 10, 1966", but appellant maintains the agreement was not actually signed by the debtor Cooper until January 18, 1966.

*January 18, 1966.* Appellant filed a financing statement claiming a security interest in the restaurant equipment delivered from June 9 to October 16, 1965, in the Office of the Recorder of Wabash County, Indiana. This financing statement is not signed by the debtor Cooper and in the space provided for showing the authority for the filing is marked: "This statement is filed without the debtor's signature to perfect a security interest in collateral (X) under a security agreement signed by the debtor authorizing secured party to file this statement . . .", which said authorization does not appear in the security agreement executed by Cooper to appellant.

*February 24, 1966.* By reason of Cooper being in default of three rent payments due under the lease, and by reason of Cooper being in default for the January and February note payments to First National and guaranteed by Central, Central, with the consent and permission of First National, took possession of the premises and all restaurant equipment of Cooper, including that placed in Cooper's possession by appellant between June 9 and October 16, 1965.

*April 13, 1966.* First National formally assigned its security interest and rights therein to Central in consideration of Central's paying the Cooper note of June 22, 1965.

*April 18, 1966.* Central gave notice to appellant that it was selling at public sale on May 2, 1966, all equipment of Cooper pursuant to the security interest of it and First National.

This notice was also given to all other creditors by publication in various newspapers.

*April 29, 1966.* Cooper signed a document purporting to surrender to appellant "right, title and interest" and "the immediate possession" of the equipment delivered to Cooper from June 9 to October 16, 1965. Appellant also filed a financing statement with the Secretary of State of the State of Indiana claiming a security interest in the restaurant equipment delivered to Cooper from June 9 to October 16, 1965.

*May 2, 1966.* The restaurant equipment in question was sold, along with the other equipment, at public sale.

The facts at bar clearly establish the following with respect to the restaurant equipment in controversy:

That the security agreement executed June 22, 1965, by the debtor Cooper with First National was a purchase money lien covering all equipment listed therein and all other equipment and fixtures thereafter acquired by the debtor Cooper. This security agreement applied to the equipment in controversy, even though it was not a purchase money lien. Acts 1963, ch. 317, § 9-110, p. 539, (§ 19-9-110, Burns' 1964 Repl.); *The Muncie National Bank et al. v. Brown* (1887), 112 Ind. 474, 14 N. E. 358.

That the security agreement executed by the debtor Cooper with First National was perfected through the filing of a financing statement with the Secretary of State on June 29, 1965. Acts 1963, ch. 317, § 9-302, p. 539 (§ 19-9-302(1), Burns' 1964 Repl.); Acts 1963, ch. 317, § 9-401, p. 539, (§ 19-9-401(1)(c), Burns' 1964 Repl.).

That the restaurant equipment in controversy was sold and delivered by appellant to the debtor Cooper between June 9, 1965, and October 16, 1965. No security agreement on the equipment in controversy was executed in favor of appellant

at that time. Acts 1963, ch. 317, § 2-401, p. 539, (§ 19-2-401 (1), Burns' 1964 Repl.).

That on December 10, 1965, or on January 18, 1966, the debtor Cooper executed a security agreement upon the equipment in question in favor of appellant as the secured party. This security agreement was not perfected since the financing statement was filed in the county of the debtor Cooper's residence on January 18, 1966, and not with the Secretary of State. Acts 1963, ch. 317, § 9-401, p. 539, (§ 19-9-401(1)(c), Burns' 1964 Repl.). Moreover, the financing statement was unsigned by the debtor Cooper and he did not in the security agreement authorize the filing of the statement without his signature. Acts 1963, ch. 317, § 9-402, p. 539, (§ 19-9-402(2)(c), Burns' 1964 Repl.). At this point in time appellant held an unperfected security interest in the equipment in controversy, which was junior to the security agreement held by First National. Acts 1963, ch. 317, § 9-312, p. 539, (§ 19-9-312(5)(b), Burns' 1964 Repl.).

That the security interest held by appellant attached and was valid as against the debtor Cooper even though it was not perfected. Acts 1963, ch. 317, §§ 9-203, 9-204, p. 539, (§§ 19-9-203(1)(b), 19-9-204(1), Burns' 1964 Repl.); *General Electric Credit Corp. v. Bankers Comm. Corp.* (1968), 244 Ark. 984, 429 S. W. 2d 60. The prior debt for the purchase price of the equipment was value. Acts 1963, ch. 317, § 1-201, p. 539, (§ 19-1-201(44), Burns' 1964 Repl.). The security agreement therefore bound the debtor Cooper with respect to appellant, and with respect to other persons, without priority as allowed by the Uniform Commercial Code. Acts 1963, ch. 317, § 9-201, p. 539, (§ 19-9-201, Burns' 1964 Repl.).

That when Central, guarantor of the note executed by the debtor Cooper in favor of First National, paid said note, it was subrogated to all rights of First National. Said rights of First National were formally assigned to Central on April

13, 1965. Acts 1963, ch. 317, § 9-504, p. 539, (§ 19-9-504(5), Burns' 1964 Repl.) ; *French Lumber Co. v. Commercial Realty & Finance Co.* (1964), 346 Mass. 779, 195 N. E. 2d 507.

Thus, the issue at bar is: May a secured party with a prior perfected security interest in equipment or other collateral, who has respossessed it, by agreement subordinate his security interest therein to a junior secured party who has not perfected his security interest by proper filing or other means as prescribed by the Uniform Commercial Code?

It is the opinion of this court that a secured party may do so, and that the evidence at bar clearly establishes that such an agreement was made by an authorized agent of Central in which the security interest of Central was deferred to the security interest of the appellant Hillman in the equipment in controversy.

The Acts of 1963, ch. 317, § 9-316, p. 539, (§ 19-9-316, Burns' 1964 Repl.) state:

"Nothing in this Article [Chapter] prevents subordination by agreement by any person entitled to priority."

The Indiana comments to this provision of the Code demonstrate that an oral subordination agreement is binding. Unlike Acts 1963, ch. 317, § 9-203, p. 539, (§ 19-9-203 (1), Burns' 1964 Repl.) there is no requirement of a writing with respect to a subordination agreement.

The testimony of Central's agent discloses that immediately preceding the sale he informed appellant not to worry about the equipment and that appellant would get his equipment. This evidence clearly establishes an agreement that appellant was to have the equipment in controversy or the money for it, and in spite of this agreement the equipment was sold to another person. The record also shows a change of position by the appellant in reliance on the agreement with Central, causing appellant to delay the removal of the equipment and thus enabling the sale to proceed.

The evidence is clear that a controversy existed as to the presence of the subordination agreement or estoppel. It is the opinion of this court that all of the evidence offered for the purpose of granting a summary judgment clearly established that the security interest of the appellant should take priority.

The judgment in this cause is therefore reversed, with instructions to the trial court to enter summary judgment for the appellant, and to determine the fair market value of the equipment in controversy at the time of said sale.

Bierly and Smith, JJ., concur.

NOTE.—While Judge Charles W. Cook participated in a conference of the judges regarding appellant's petition for rehearing, and concurred in the result at the time of the conference, his untimely death occurred before the adoption of this opinion.

NOTE.—Reported in 242 N. E. 2d 522.