**VAHLSING CHRISTINA CORPORATION, INC., Trustee, et al., Appellants,**

v.

**The FIRST NATIONAL BANK OF HOBBS, Appellee.**

**No. 6271.**

Court of Civil Appeals of Texas, El Paso.

Jan. 24, 1973.

Rehearing Denied March 21, 1973.

Vann Culp, Lynch, Chappell, Allday & Aldridge,. Martin L. Allday, James N. Alsup, Midland, Raymond Gill, Los Angeles, Cal., Graves, Dougherty, Gee, Hearon, Moody & Garwood, Duncan Elliott Osborn, Millard Ruud, Austin, for appellants.

John L. Shepherd, Haley & Smith, Stephen Haley, Seminole, Williams, Johnson, Houston, Reagan & Porter, Theodore R. Johnson, Hobbs, N. M., Crenshaw, Dupree & Milam, James H. Milam, Cecil Kuhne, Lubbock, for appellee.

## OPINION

RAMSEY, Chief Justice.

This is an appeal from a declaratory judgment involving the priority of liens. The action was initiated in the trial Court by Vahlsing Christina Corporation, Inc., Trustee, et al., Plaintiffs-Appellants, against The First National Bank of Hobbs, Defendant-Appellee, seeking injunctive relief to prevent the Defendant from foreclosing on collateral securing liens of both parties. Injunctive relief was denied, and both parties amended seeking declaratory judgment to determine lien priorities. Judgment was entered in the trial Court for the Defendant, The First National Bank of Hobbs.

The parties involved will be referred to as follows:

1. Vahlsing Christina Corporation, Inc. will be referred to as "Vahlsing."

2. Vahlsing, Inc. will be referred to as "Vahlsing, Inc."

3. The First National Bank of Hobbs will be referred to as the "Bank."

4. Fred S. Barrett, Jr. will be referred to as "Barrett."

5. Occidental Petroleum Land and Development Company will be referred to as "Oplad."

6. Daedalian Corporation will be referred to as "Daedalian." This corporation merged with Agro Resources, Inc.,

formerly Agro Industries, Inc. and changed its name to Agro Resources, Inc., and will be referred to as "Agro."

7. Hobbs Land and Cattle Company will be referred to as "Hobbs."

The facts upon which the litigation is based are as follows:

Barrett was the owner of farms and equipment on which existed prior liens not material to this opinion. On February 20, 1969, Barrett sold the property and equipment to Daedalian (Agro), receiving a secured note on the land and equipment for $1,298,279.34. These liens will be referred to as the "1969 Barrett Liens."

On March 30, 1970, Agro sold its real estate to Oplad and sold the farm machinery to Hobbs. On the same date, Oplad conveyed the land to Hobbs, Oplad receiving a note for $3,145,833.00, which was subject to the 1969 Barrett Liens. The liens securing this note will be referred to as the "March, 1970, Oplad Liens," which liens were secured by the land and the equipment involved in this suit.

On this same date, March 30, 1970, the holders of the Barrett liens subordinated their interests in the 1969 Barrett Liens insofar as the equipment only was concerned, to the March 30, 1970, Oplad liens. The Bank had a copy of this subordination agreement and was aware of its existence, though the agreement itself was not filed for record.

Thereafter, Hobbs and Agro, farming the land, applied to the Bank for a loan which was evidenced by a note in the amount of $600,000.00, dated April 23, 1970, secured by liens on the land and equipment. On May 1, 1970, Oplad subordinated the March, 1970, Oplad Liens to the Bank liens, these later liens hereafter referred to as the "May, 1970, Bank Liens."

Thus, the liens involved in the order of their dates are as follows:

1. 1969 Barrett Liens,

2. March, 1970, Oplad Liens,

3. May, 1970, Bank Liens.

It is also noted that all of the foregoing liens were properly evidenced and secured, there being no question as to the validity of any lien nor the requirements having been met for perfection.

Hobbs and Agro defaulted in payments to the Bank. On February 10, 1971, the Bank demanded payment of its note and notified Oplad that if the note was not paid by February 24, 1971, the Bank would foreclose. The Bank was not paid and commenced taking possession of the personal property and posted notices of sale under its deed of trust.

At this point, Mr. Fred H. Vahlsing, Jr., purportedly representing Oplad, interceded for the purpose of persuading the Bank not to foreclose and to permit the farming operations to continue. He agreed with the Bank to deliver 200,000 shares of Vahlsing, Inc. (a separate corporate entity, and not the same as Vahlsing) stock as additional security for Agro whereby the Bank would release its lien on the real property. This the Bank agreed to do and released its real estate lien.

On March 15, 1971, Vahlsing, as trustee for Oplad, purchased the 1969 Barrett Liens, paying therefor the sum of $934,783.88. Oplad furnished the money to Vahlsing for the purchase.

On March 30, 1971, Mr. Vahlsing delivered to the Bank 200,000 shares of unregistered Vahlsing, Inc. stock as additional security for the Agro indebtedness as consideration for the Bank to release its deed of trust on the real estate representing that a substantial payment could be made to the Bank from the 1971 crop.

On this basis, the Bank did forego its foreclosure proceedings, but on November 2, 1971, failing to receive any payment, the Bank again made demand for payment

of its note. No reply was received, and the Bank commenced to take the personal property on November 29, 1971.

At this point, Vahlsing, as trustee, instituted the injunctive proceedings to prevent the taking and foreclosure of the Bank against the equipment, which was denied by the Court and thence this proceeding for declaratory judgment.

At the conclusion of the hearing, judgment was entered for the Bank, and the Court filed conclusions of law, as follows:

1. That Oplad had the right, and did transfer unconditionally, a portion of its lien priority to the Bank.

2. That Oplad cannot defeat its subordination agreement with the Bank by acquiring outstanding interests which were subordinate to Oplad's liens prior to the subordination executed by Oplad to the Bank.

3. That Oplad's acquisition of the 1969 Barrett Liens was for the purpose of defeating its own act of subordination and was done in bad faith.

4. That the Bank's lien entitled it to priority and possession of the chattels.

In reviewing the record, neither party questions the validity, priority or assignability of the 1969 Barrett Liens. The Bank, when making its loan to Agro and Hobbs, was advised by its attorney of the existence and priority of the Barrett liens. Vahlsing, before purchasing the Barrett liens, was advised by the same attorney that in his opinion the Barrett liens were prior to the Bank liens but admonished that litigation might be required to establish the priority of the Barrett liens. This opinion, without commenting on its legal significance, has at least proved prophetically correct.

At the time of the execution of the Oplad-Bank subordination agreement, Barrett still held his liens. The subordination agreement itself describes the liens then held by Oplad in detailed particularity as to the date of the note, its amount and sets forth the recorded reference of Oplad's deed of trust as well as the Clerk's file numbers of the financing statements involved. The agreement itself then provides that "the Occidental (Oplad) Deed of Trust and the Occidental (Oplad) Security Agreements shall be, and they hereby are made, unconditionally subordinate, subject and inferior to the Bank Deed of Trust and the Bank Security Agreements."

On March 30, 1970, and prior to the Bank loan, Barrett had executed a subordination agreement to Oplad, only insofar as the personal property was concerned, expressly excluding therefrom his lien affecting the real estate. Barrett, however, did not execute the Oplad-Bank agreement and the Oplad-Bank agreement made no reference to the Oplad-Barrett agreement. Thus, the subordination instruments by their terms would not give the Bank lien priority over the 1969 Barrett Liens.

Oplad contends, and the testimony appears in the record, that approximately one year later, on March 15, 1971, Barrett was threatening foreclosure and Oplad, attempting to delay such action first offered to pay the amount in arrears of approximately $100,000.00, but this being refused, Vahlsing, as trustee for Oplad, purchased the 1969 Barrett Liens for the sum of $934,783.88 to prevent Barrett's threatened foreclosure.

The only question presented is whether or not the Oplad-Bank subordination agreement of May 1, 1970, will subordinate the lien priority of the Barrett liens by reason of the Oplad-Barrett subordination agreement which was previously executed.

In determining priority of conflicting perfected security interests, on the same collateral, the Tex.Bus. & Comm.Code Ann., V.T.C.A., Sec. 9.312(e) provides that they shall be determined as of the time of filing. In the situation here the 1969 Barrett Liens are prior in time.

The Code further provides in Sec. 9.316 as follows:

"Nothing in this chapter prevents subordination by agreement by any person entitled to priority."

A commentary is contained under Sec. 9.-316 to the effect that only the person entitled to priority may make such an agreement and that the prior right cannot be adversely affected by an agreement to which the person is not a party.

Thus, on or about May 1, 1970, when the Bank obtained its deed of trust lien and security agreements, and after the Bank obtained the Oplad-Bank subordination, the lien priorities were as follows:

As to the real estate:

    a.  The 1969 Barrett Liens.

    b.  The May, 1970, Bank Liens.

    c.  The March, 1970, Oplad Liens.

As to the personal property:

    a.  The 1969 Barrett Liens were superior to the Bank liens but subordinate to the Oplad liens.

    b.  The Bank liens were superior to the Oplad liens.

The 1969 Barrett Liens were never subordinated to the Bank liens. Prior to the purchase by Vahlsing of the 1969 Barrett Liens, these liens were prior to the Bank. After their purchase, such liens were still prior to the Bank. Viewing the matter strictly from the standpoint of priority, there was not any change in the Bank's priority. From a practical standpoint, however, Vahlsing, as the owner of the lien and as trustee for Oplad, could conduct the foreclosure against the personal property and equipment and thereby dissipate the same collateral as held by the Bank which would materially affect the Bank's possibility of recovery. Still, there is no evidence in the record nor any testimony presented, whereby Oplad agreed either expressly or impliedly to protect or maintain the Bank's position under the terms of the Barrett-Oplad subordination. Undoubtedly, the Bank felt that Oplad should.

Subordination agreements have long been recognized and enforced by the Courts of this State. They being contractual in nature recommends their construction in accordance with their written provisions. McConnell v. Mortgage Investment Company of El Paso, 157 Tex. 572, 305 S.W.2d 280 (Tex.Sup.1957). The Supreme Court of Texas has furnished such guidelines in the construction of subordination agreements by declaring that "Doctrines which produce legal consequences contrary to the expressed intention of the contracting parties are admittedly hazardous to business practices and should not be resorted to where there is an absence of a constitutional, stautory or public policy demand compelling such course." McConnell v. Mortgage Investment Company of El Paso, supra.

■ The language of the Bank-Oplad subordination agreement is specific as to the liens subordinated. There is no contention as to any ambiguity in the wording of the agreement. We hold that a subordination agreement is nothing more than a contractual modification of lien priorities and must be construed according to the expressed intention of the parties and its terms.

Courts in other States have enforced oral subordination agreements under the Uniform Commercial Code as well as determining priority by estoppel. Williams v. First National Bank & Trust Company of Vinita (Okl.1971), 482 P.2d 595; Hillman's Equipment, Inc. v. Central Realty, Inc. et al. (1968), 144 Ind.App. 18, 242 N.E.2d 522. Neither situation appears in this record.

■ In carefully reviewing the record, we fail to find an abrogation of the subordination agreement by Oplad in its agreement with the Bank. We can only assume,

since nothing appears in the record to the contrary, that the 1969 Barrett Liens were assignable to such purchaser as might desire to purchase the liens. We can determine no prohibition from the record presented which would prevent their assignability to Vahlsing. Oplad, through its trustee Vahlsing, purchased the liens for the purpose of preventing a foreclosure in March, 1971, and thereafter in November, 1971, asserts the priority of the Barrett liens over the Bank liens. At the same time, the record does not reveal any act of Oplad, Vahlsing or Vahlsing, Inc. to induce the Bank to lend its credit secured by an inferior lien. Neither does the record reflect any representation, expressed or implied, that would give the Bank any assurance that its position would be maintained under the Barrett-Oplad subordination.

It is the opinion of this Court that the trial Court erred in decreeing that the Bank liens were entitled to priority over the liens held by Vahlsing and we reverse and render the judgment of the trial Court and hold that liens held by the Plaintiff, Vahlsing, are entitled to priority over the liens of the Defendant, Bank.