297 N.E.2d 446 (1973)
John C. ERTEL, IV, Third-Party Plaintiff-Appellant,
v.
RADIO CORPORATION OF AMERICA, Third-Party Defendant-Appellee, John R. Dugan and Delta Engineering Corporation, Defendants-Appellees, Economy Finance Corporation, Plaintiff-Appellee.
No. 1-273A36.
Court of Appeals of Indiana, First District.
June 29, 1973.
Rehearing Denied July 27, 1973.
*447 Stephen Goldsmith, Barnes, Hickam, Pantzer & Boyd, Indianapolis, for appellant.
Alan H. Lobley, D. Robert Webster, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee.
LOWDERMILK, Judge.
This cause originated with the filing of a complaint by plaintiff, Economy Finance Corporation (Economy), against defendants Delta Engineering Corporation (Delta), John R. Dugan (Dugan), and John C. Ertel IV (Ertel). The complaint sought recovery against Delta for amounts due under a loan and security agreement covering revolving inventory and accounts receivable. Dugan and Ertel were guarantors for the payment by Delta.
Ertel filed a third-party complaint against Radio Corporation of America (RCA), stating that RCA had wrongfully paid accounts receivable to Delta when, in fact, Delta had assigned these accounts receivable to Economy, with Economy giving proper notice to RCA of that assignment. Ertel contended that he would not have been liable as guarantor on the note had RCA made payments to Economy pursuant to the assignment.
Summary judgment was entered against Ertel on the original complaint, which he paid. The judgment of the court on the third-party complaint reads as follows, to-wit:
"Comes now the Court and being duly advised in the premises and finds for the third party defendant Radio Corporation and against the third party plaintiff John C. Ertel IV on the third party complaint of John C. Ertel IV and the answer thereto costs vs. Third Party plaintiff, John C. Ertel IV."
Ertel timely filed his motion to correct errors and this appeal follows the overruling of that motion.
The problem is as follows. RCA contracted to purchase certain items from Delta, giving Delta accounts receivable; Delta obtained a loan from Economy with the security being an interest in the revolving inventory and accounts receivable; Dugan, President and General Manager of Delta, and Ertel, appellant herein, Secretary-Treasurer of Delta, signed as guarantors *448 on that note; certain machines were delivered to RCA; Economy notified RCA by registered mail of the assignment prior to any payments by RCA; said notice notified RCA of the assignment, identified the rights assigned, and required payment be made to Economy; (see § 9-318(3) infra) RCA has stipulated that the assignment was valid and that the notice was received at its shipping dock; RCA, contrary to that notice of assignment, made all payments directly to Delta; Delta defaulted on the note and Dugan's whereabouts are unknown; and this action was begun by Economy.
Ertel contends that the decision of the trial court is contrary to law. Ertel relies on the Uniform Commercial Code (UCCA) and claims that he is subrogated to the rights of Economy against RCA. This subrogation is covered by the UCC, as adopted by the State of Indiana, as follows:
"A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of the collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this Article [Chapter]." Ind. Ann. Stat. § 19-9-504(5) (Burns 1964 Repl.) I.C. 1971, XX-X-X-XXX(5).
Ertel relies on the case of Gerber v. Sharp (1880), 72 Ind. 553, 556, as follows:
"It is an established principle of equity that sureties, or those who stand in the situation of sureties for those who pay a debt for them, are entitled to stand in the place of the creditor, or to be subrogated to all his rights as to any fund, lien, or equity which he may have against any person or property on account of the debt."
Ertel further relies on the case of Hillman's Equip. Co. v. Central Realty, Inc. (1968), 144 Ind. App. 18, 23, 242 N.E.2d 522, 525, wherein this court, in a similar type problem stated that:
"... when Central, guarantor of the note executed by the debtor Cooper in favor of First National, paid said note, it was subrogated to all rights of First National... ."
RCA first contends that this alleged error was not properly raised in Ertel's motion to correct errors, but a close examination of the motion shows that it is sufficient to raise all errors discussed in this opinion.
RCA then contends that Ertel was not subrogated to Economy's rights and that even if he was, he could only assert those rights Economy might have against Delta, and not RCA, a third party.
It is our opinion that Ertel was subrogated to the rights of Economy when he had to pay Economy as guarantor on the note.
In the case of First Nat. Bank of Sikeston, Mo. v. Jefferson S. & D., Inc. (S.D. Miss., S.D., 1971), 341 F. Supp. 659, 672, in a factual situation similar to the case at bar, the United States District Court discussed subrogation as follows:
"The right of subrogation arises when it is shown that the party claiming such has paid the debt, that he was not a volunteer and that he was secondarily liable. Although no general rule can be laid down as the test to be applied in all cases, the applicability depending upon the circumstances attending the payment of the debt, it should be applied where demanded by the dictates of equity, justice and good conscience. Subsequent to the return of the unpaid drafts, Montgomery orally agreed to see that the bank lost no money as a result of the overdraft; executed a guaranty agreement whereby he was obligated to pay the amount of the overdraft, and subsequently paid the plaintiff bank $135,054.68. *449 Under these circumstances, this Court is of the opinion that Montgomery qualifies as a subrogee....
* * * * * *
Thus, Montgomery is subrogated to all the rights of the bank, including the right to the debt itself, and has the same priority with respect to the perfected security interest as that of the bank."
See also: Bruer v. Sanford Atlantic National Bank (Fla.App., 1971), 247 So.2d 764; Gutenkunst v. United States, 8 Uniform Commercial Code Reporting Service 1372 (1971).
As stated in Gerber, supra, and Sikeston, supra, the right of subrogation is equitable in nature. Ertel, having satisfied his obligation as guarantor on the note, became subrogated to all rights of Economy against both Delta and RCA. Further, compare UCC §§ 3-603(2), 3-415(5).
Having found subrogation, we must now discuss what rights Economy had against RCA.
RCA asserts that the contract between it and Delta contained provisions limiting the right of assignment and requiring two copies of any assignment. However, RCA stipulated at trial that the assignment was valid. The question now is, did RCA receive notice of said assignment? At trial RCA stipulated that the notice from Economy was received at the proper place by an employee empowered to accept such notice, (in this case, by registered mail.) We have examined the notice sent and find that it complies with the requirements for a valid notice. Assignment is covered under the UCC as follows:
"19-9-318. Defenses against assignee  Modification of contract after notification of assignment  Term prohibiting assignment ineffective  Identification and proof of assignment.  (1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section [19-]9-206 the rights of an assignee are subject to
(a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and
(b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.
(2) So far as the right to payment under an assigned contract right has not already become an account, and notwithstanding notification of the assignment, any modification of or substitution for the contract made in good faith and in accordance with reasonable commercial standards is effective against an assignee unless the account debtor has otherwise agreed but the assignee acquires corresponding rights under the modified or substituted contract. The assignment may provide that such modification or substitution is a breach by the assignor.
(3) The account debtor is authorized to pay the assignor until the account debtor receives notification that the account has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.
(4) A term in any contract between an account debtor and an assignor which prohibits assignment of an account or contract right to which they are parties is ineffective." Ind. Ann. Stat. § 19-9-318 (Burns 1964 Repl.), I.C. 1971, XX-X-X-XXX (U.C.C. § 9-318).
The UCC further defines notice as follows:
"(25) a person has `notice' of a fact when (a) he has actual knowledge of it; *450 or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. A person `knows' or has `knowledge' of a fact when he has actual knowledge of it. `Discover' or `learn' or a word or phrase of similar import refers to knowledge rather than reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by this Act. [Chapters 1 to 9 of this title.]
(26) A person `notifies' or `gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person `receives' a notice or notification when
(a) it comes to his attention; or
(b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communication." Ind. Ann. Stat. § 19-1-201(25)(26) (Burns 1964 Repl.), I.C. XX-X-X-XXX(25), (26) (U.C.C. § 1-201(25), (26).)
RCA contends that although it may have had technical "notice" it did not have knowledge since the notice sent by Economy never reached the accounting department at RCA. RCA offers no factual explanation as to why this mix-up occurred.
Ertel brings the convincing argument that he should not be held liable for RCA's negligence and with this we wholeheartedly agree.
The UCC is clear on notice, as § 9-318(3) requires simply that the account debtor is authorized to pay an assignor until he receives notification of the assignment. Under the unambiguous provisions of § 1-201, it can hardly be said that RCA did not receive notice. To hold otherwise would require an assignee to personally deliver proper notice to an account debtor and personally see that such notice was duly received, acknowledged, and acted upon. Such a requirement is too ludicrous to require further discussion.
Ertel contends that the court could not have reached the issue of set-off and counterclaim as raised by RCA and with this we agree.
Moreover, a set-off arising out of a separate transaction subsequent to the assignment notification could not bind the assignee. (See § 19-9-318(1) (b)).
For the reasons set out herein the court's finding for RCA and against Ertel was necessarily based on insufficient evidence and was thus contrary to law.
Judgment reversed.
ROBERTSON, P.J., and LYBROOK, J., concur.