**In re MEDICAL OXYGEN SERVICE, INC., Debtor.**

**USI CAPITAL AND LEASING, Plaintiff,**

**v.**

**MEDICAL OXYGEN SERVICE, INC., Defendant.**

**Bankruptcy No. 82–05578A.**

**Adv. No. 83–0744A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 12, 1984.

P. Allen Schwartz, Marietta, Ga., for plaintiff.

Mark A. Kelley, Carr, Abney & Tabb, Atlanta, Ga., for defendant.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the complaint filed by the plaintiff, USI Capital and Leasing ("USI"), for relief from the automatic stay. The plaintiff contends that it is either a lessor or a secured creditor with regard to 46 Boras Model 290 Oxygen Generators currently in possession of the debtor, Medical Oxygen Service, Inc. ("Medical Oxygen"). Medical Oxygen answered the complaint and contends that USI is not a lessor and is secured only as to four of the oxygen generators. The parties have stipulated that the Court shall determine USI's interest—as a lessor, secured creditor or unsecured creditor—on the basis of the exhibits attached to the pleadings. In the event that USI is determined to be a lessor or a secured creditor, the parties have stipulated that another hearing shall be held on the issue of USI's adequate protection.

USI transferred the oxygen generators to Medical Oxygen in six transactions. In each transaction, the parties executed a document entitled "Equipment Lease Agreement". Further, as to the oxygen generators transferred in each transaction, USI filed a UCC Financing Statement. The issues before the Court are: (1) Are the documents entitled "Equipment Lease Agreement" bona fide leases or installment sales contracts; and (2) If the transactions are installment sales, has USI perfected its security interest in the collateral? For the following reasons, the Court determines

that USI is an unsecured creditor as to all but four (4) of the oxygen generators transferred to Medical Oxygen.

## LEASE OR INSTALLMENT SALES CONTRACT

At the outset, the Court must determine whether the transaction in each instance was a lease or an installment sales contract and security agreement. The Uniform Commercial Code, in its definition of "security interest" in § 1–201(37),[1] sheds some light on this issue. That section states as follows:

Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration *does* make the lease one intended for security. (Emphasis added).

■ In the case *sub judice,* consideration of all the documents compels a finding that the parties intended a sale of the oxygen generators. Although each purported lease agreement describes a three-year "lease" at a set monthly "rental", attached to each agreement is a "Purchase Option Guaranty" which *requires* Medical Oxygen to purchase the oxygen generators. The "Purchase Option Guaranty" specifies the purchase price, which is payable thirty days after the last payment is due under the purported "lease". Hence, at the conclusion of the agreement, Medical Oxygen is the outright owner of the oxygen generators.

This Court has previously considered the lease/sale dichotomy in *Michael Jordan TV Company v. Whatley (In re Whatley),* Case No. 83–00120N (Bkrtcy.N.D.Ga., July 11, 1983), and the Court analyzed the case law as follows:

[A]lthough an option to purchase does not automatically make a lease one intended

for security, if the option to purchase is for nominal consideration it is conclusively presumed to be "intended as security, without reference to other facts from which the opposite inference might be drawn." *In re J.A. Thompson & Son, Inc.,* 665 F.2d 941 (9th Cir.1982); see also *Percival Construction Co. v. Miller & Miller Auctioneers,* 532 F.2d 166 (10th Cir. 1976); *In re Vaillancourt,* 7 U.C.C. Rep. 748 at 759 (B.C.D. Maine 1970). Only if the option to purchase is for greater than nominal consideration is it necessary to analyze further the facts of the case to discern whether an agreement is a true lease or one intended for security.

Courts have utilized three tests for determining if a purchase-option price is nominal. *Peco, Inc. v. Hartbauer Tool & Dye Co.,* 262 Or. 573, 500 P.2d 708, 11 U.C.C.Rep. 383 (1972); *McGalliard v. Liberty Leasing Company of Alaska,* 16 U.C. C.Rep. 906 (D.Alaska 1975). These tests are: (1) comparison of the option price with the list price of the subject property, *Percival Construction Co. v. Miller & Miller Auctioneers, supra; In re Alpha Creamery Company, Inc.,* 4 U.C.C.Rep. 794 (W.D.Mich.1967); (2) whether completion of the purchase would be the only sensible course open to the lessee, *In re Vaillancourt, supra; Percival Construction Co. v. Miller & Miller Auctioneers, supra;* and (3) comparison of the option price with the value of the property at the time for exercising the option, *Peco, Inc. v. Hartbauer Tool & Dye Co., supra; In re Oak Manufacturing,* 6 U.C.C.Rep. 1273 (S.D.N.Y.1969); *In re Alpha Creamery Company, Inc., supra.*

Courts have deemed an option price that is less than 25% of the list price of the subject property to be nominal. *Percival Construction Co. v. Miller & Miller Auctioneers, supra; In re Alpha Creamery Co., Inc., supra.* In the case *sub judice,* no evidence was presented concerning the list price of the television at the initial time of contracting. Alternatively, some courts have used the total

---

1. Official Code of Georgia § 11–1–201(37) (1982).

amount of rental payments for comparison with the option price rather than list price. *National Equipment Rental Limited v. Priority Electronics Corp.,* 435 F.Supp. 236 (E.D.N.Y.1977) and cases cited therein.

*In re Whatley,* Slip Op. at 3, 4.

In each of the six transactions involved in the case *sub judice,* the ratio of the purchase "option" price to the present value of the lease payments (discounted at the agreed-upon interest rate at the time of the transaction) is well below 25%. Specifically, the ratios range from 9.6% to 11.5%.

More significant than the aforementioned ratios is the fact that Medical Oxygen has not simply been given an *option* to purchase collateral at a nominal price; Medical Oxygen is under a *contractual duty* to make the purchase. Accordingly, Medical Oxygen is the purchaser, and USI is the seller and secured party. USI's status may now be determined by examining its compliance with Article 9 of the Uniform Commercial Code.

### SECURITY INTEREST

Pursuant to § 9–203(1),[2] a security interest does not attach until, *inter alia,* the collateral is in the possession of the secured party or the debtor has signed a security agreement. In the instant case, Medical Oxygen has possession of the collateral. Therefore, USI's security interest does not attach unless a security agreement has been executed in compliance with U.C.C. § 9–203.

In the preceding section, the Court found that the "Equipment Lease Agreement" executed in each of the six transactions was an installment sales contract and security agreement. Said "Lease" complies with the requirements of U.C.C. § 9–203(1): (1) Each "lease" contains a description of the collateral; and (2) Each "lease" was signed by an agent of Medical Oxygen.

Uniform Commercial Code § 9–302(1)[3] requires that a financing statement be filed to perfect all security interests except as provided in subsections (a) through (g) of the same section. The transactions in the case *sub judice* do not fall within subsections (a) through (g) of U.C.C. § 9–302(1); therefore, USI's secured or unsecured status turns upon its compliance with U.C.C. § 9–402.[4]

As stated above, USI filed a financing statement in conjunction with each of the six transactions. A review of those financing statements shows that only one was signed by an agent for Medical Oxygen. The question before this Court is whether the absence of the debtor's signature on the financing statements for the first through the fifth transactions renders USI unperfected as to the oxygen generators transferred in those transactions.

■ U.C.C. § 9–402(1) states that "[a] financing statement is sufficient if it . . . is signed by the debtor . . . " This Court must decide whether the debtor's signature is an absolute requirement for a valid financing statement under § 9–402(1). Beyond the seemingly clear statement in U.C.C. § 9–402(1), the Court must evaluate the effect of U.C.C. § 9–402(8), which states that:

> A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

In other words, has USI substantially complied with the requirements of U.C.C. § 9–402 despite the absence of the debtor's signature?

No Georgia cases squarely on point have been cited by the parties, and the Court has found no such cases after conducting its own research. Although case law from other jurisdictions is split, the preponderant view is that the debtor's signature is required under § 9–402(1) unless the exceptions stated in subsection (2) apply.

**2.** Official Code of Georgia § 11–9–203 (1982).

**3.** Official Code of Georgia § 11–9–302 (1982).

**4.** Official Code of Georgia § 11–9–402 (1982).

**344**

In *Beneficial Finance Co. v. Kurland Cadillac-Oldsmobile, Inc.,* 32 A.D.2d 643, 300 N.Y.S.2d 884, 6 U.C.C.Rep. 539 (N.Y.App. Div.1969), the Court held that a financing statement signed only by the secured party was in substantial compliance with the New York version of U.C.C. § 9–402. Under New York law, a debtor's signature is not required on a financing statement where the security agreement, signed by the debtor, authorizes the secured party to file a financing statement. Although the secured party in *Beneficial Finance* failed to check a box on the U.C.C. financing form indicating that the debtor had signed a security agreement authorizing the secured party to file a financing statement, the Court found that the financing statement gave adequate notice of the security interest and was, accordingly, not seriously misleading.

Cases holding that a security interest is unperfected due to the absence of the debtor's signature on the financing statement include the following: *Hobart Corp. v. North Cent. Credit Services, Inc.,* 29 Wash. App. 302, 628 P.2d 842, 31 U.C.C.Rep. 1481 (1981); *In re Maple Contractors, Inc.,* 172 N.J.Super. 348, 411 A.2d 1186, 28 U.C.C. Rep. 1495 (1979); *Travelers Indem. Co. v. First Nat. Bank,* 368 So.2d 836, 25 U.C.C. Rep. 1455 (Miss.1979); *In re Industro Transister Corp.,* 14 U.C.C.Rep. 522 (Bkrtcy.E.D. N.Y.1973); *Hillman's Equipment, Inc. v. Central Realty, Inc.,* 144 Ind.App. 18, 242 N.E.2d 522, 5 U.C.C.Rep. 1162, reversed on other grounds, 253 Ind. 48, 246 N.E.2d 383 (1968); *Bank of North America v. Bank of Nutley,* 94 N.J.Super. 220, 227 A.2d 535, 4 U.C.C.Rep. 56 (1967); *In re Causer's Town & Country Supermarket, Inc.,* 2 U.C.C.Rep. 541 (Bkrtcy.N.D.Ohio 1965).

The Court in *Causer's Town & Country* reasons that the absence of the debtor's signature does not constitute substantial compliance with U.C.C. § 9–402 because subsection (2) of that section outlines the specific circumstances in which the debtor's signature is not required. Unless subsection (2) of U.C.C. § 9–402 applies, the debtor's signature is a material aspect of the financing statement. Another rationale for holding that the debtor's signature is re-

quired on the financing statement is that the debtor's signature is necessary to authenticate the financing statement. *In re Industro Transister Corp., supra.*

This Court follows the weight of authority and holds that the debtor's signature on the financing statement is required by Georgia law under the facts of this case. USI holds a perfected security interest only in the four Boras Model 290 Oxygen Generators identified in the June 15, 1981 transaction—the last transaction between the parties—as bearing the serial numbers 2905115, 2905116, 2905117 and 2905112. USI's lien as to the other oxygen generators is avoided pursuant to § 544 of the Bankruptcy Code.

A hearing on the question of USI's adequate protection as to the collateral identified herein shall be held at 11:00 A.M., on the 14th day of February, 1984, in Room 1705, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia.

IT IS SO ORDERED.