## ITT DIVERSIFIED CREDIT CORPORATION, et al., Appellants,

### v.

## FIRST CITY CAPITAL CORPORATION (Formerly the Small Business Investment Company of Houston), Appellee.

### No. B14–85–866–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 28, 1986.

Rehearing Denied Sept. 25, 1986.

John A. Cavin, J. Grady Randle, Ross, Banks, May, Cron & Cavin, Houston, for appellants.

Michael A. Petersmith, Mark D. Wilson, Ladin & Engel, Houston, for appellee.

PAUL PRESSLER, SEARS and CANNON, JJ.

### OPINION

SEARS, Justice.

This appeal involves the effect of a subordination agreement on the priority of liens. First City National Bank (the Bank) acquired a first lien security interest in certain assets of the debtor, Sisco Enter-

prises, Inc., on May 12, 1978. On July 10, 1978, appellee, First City Capital Corporation (formerly Small Business Investment Company of Houston), acquired a second lien security interest in the same assets. Finally, on October 20, 1978, appellant, ITT Diversified Credit Corporation, acquired a third lien security interest in these assets. At this point in time the priority of liens was as follows: (1) Bank, (2) appellee, and (3) appellant.

On August 21, 1979, the Bank executed a subordination agreement with appellant whereby the Bank subordinated any interest it had in certain assets of the debtor, *i.e.*, nine boats and two motors, to the interest of appellant. The subordination agreement reads in whole as follows:

> In consideration for ITT Diversified Credit Corp.'s present and future financial considerations to Sisco Enterprises, Inc., d/b/a California Marine, the undersigned hereby subordinates any interest that it may have in the boats and motors listed on the attached Exhibit 'A' to ITT Diversified Credit Corp.'s security interest.
>
> IN WITNESS WHEREOF, the undersigned has executed this document on this *21st* day of *August*, 1979.

Thereafter, appellant seized certain assets of the debtor. It sold five of the boats covered by the subordination agreement for $23,994.16. Appellee was not paid any of the proceeds from the sale and filed a lawsuit alleging that its security interest in the boats was superior to appellant's interest. The trial court found that the subordination agreement between the Bank and appellant did not give appellant a security interest in the boats superior to the interest possessed by appellee. The court rendered judgment that appellee recover from appellant the proceeds from the sale of the boats, plus interest and costs. We affirm.

■ Appellant complains that the trial court erred in not allowing it to succeed to the interest of the subordinator, the Bank. Section 9.316 of the Texas Business & Commerce Code allows parties with superior priority interests to subordinate them to those with inferior interests. It provides that "[n]othing in this chapter prevents subordination by agreement by any person entitled to priority." Tex.Bus. & Com.Code Ann. § 9.316 (Vernon Supp.1986). Appellant argues that the intent of the parties to this subordination agreement was that appellant should *succeed* to the interest of the Bank. Our reading of the agreement indicates no such intent; to the contrary, the only intent expressed by the parties in the agreement was that the Bank's interest would be subordinated to that of appellant.

■ Appellant cites the case of *Vahlsing Christina Corp. v. First National Bank of Hobbs*, 491 S.W.2d 954 (Tex.Civ.App.—El Paso, 1973, writ ref'd n.r.e.), for the proposition that a subordination agreement is nothing more than a contractual modification of lien priorities and must be construed according to the expressed intention of the parties and its terms. *Vahlsing*, 491 S.W.2d at 958. While we agree with this statement by the El Paso Court, we expressly disagree with those statements of the court as to the priority of the lienholders.

In *Vahlsing*, Barrett owned real estate and equipment which he sold to Argo on February 20, 1969. In exchange for the real estate and equipment, Argo executed a note in the amount of $1,298,279.34 in favor of Barrett. Barrett secured the note with a lien on the real estate and equipment. On March 30, 1970, Argo sold the real estate to Oplad and the equipment to Hobbs. On that same date, Oplad sold the real estate to Hobbs, who executed a $3,145,833.00 note secured by *both* the real estate and the equipment in favor of Oplad. Also on that date, Barrett agreed to subordinate his lien on the equipment to Oplad's lien. The priority of liens on the equipment then became Oplad first, Barrett second.

On April 23, 1970, Hobbs and Argo obtained a $600,000.00 note from the Bank which was secured for the Bank with liens on the real estate and equipment. The Bank's priority in the equipment is now

third, behind Oplad, which is first, and Barrett, who is second.

However, on May 1, 1970, Oplad agreed to subordinate its liens to the Bank's liens. Now the priority of liens is Barrett first, the Bank second, and Oplad third. On March 15, 1971, Vahlsing purchased the Barrett liens with money furnished by Oplad. Priority in the equipment is now as follows: the Vahlsing (formerly Barrett) liens first, the Bank liens second, and Oplad liens third. After Hobbs and Argo defaulted on their payments, the Bank began seizing the equipment on November 19, 1971, and Vahlsing sued.

The *Vahlsing* court described the priority of the equipment liens as of May 1, 1970, as follows:

  a. The 1969 Barrett Liens were superior to the Bank liens but subordinate to the Oplad liens.

  b. The Bank liens were superior to the Oplad liens.

*Vahlsing,* 491 S.W.2d at 958.

The holding in (a) places Barrett ahead of the Bank but behind Oplad; therefore, the Bank is also behind or inferior to Oplad. However, in (b) the court finds the Bank liens superior to Oplad. This is contradictory and an impossible result. We do not know what the El Paso Court intended to say when it enunciated the two distinctly different lien priorities referred to above. The court correctly concluded, however, that the liens held by Vahlsing (formerly Barrett) were entitled to priority over the liens of the Bank.

■ Moreover, the *Vahlsing* court cited with approval a case from their court which is directly on point with the one presently before us. In *McConnell v. Mortgage Investment Co. of El Paso,* 292 S.W.2d 636, 638 (Tex.Civ.App.—El Paso 1955, writ ref'd n.r.e.), *aff'd,* 157 Tex. 572, 305 S.W.2d 280, 282 (1957), the court held that "he who holds a first lien and subordinates same to a third lien makes his lien inferior or subordinate to both second and third liens. *Shaddix v. National Surety Co.,* 221 Ala. 268, 128 So. 220 (1930)." This holding applies precisely to the situation before the court in this case. The Bank subordinated its first lien to appellant, the third lienholder. The Bank's lien therefore became subordinate to both appellee's second lien and appellant's third lien. Obviously, appellee's lien then became superior to both appellant's lien and the Bank's lien:

| Pre-Subordination | Post-Subordination |
| --- | --- |
| (1) Bank | (1) Appellee |
| (2) Appellee | (2) Appellant |
| (3) Appellant | (3) Bank |

Appellant states in its brief that the Bank *transferred* its priority right as first lienholder to appellant, allowing it to stand in the shoes of the Bank. We cannot agree with this contention. We find no evidence in the record of a transfer of priority rights. Undoubtedly, the Bank could have transferred its interest to any inferior lienholder. If it had done so, the former inferior lienholder who purchased the Bank's interest would have succeeded to the Bank's superior priority position and stepped into its shoes on the priority ladder. However, that is not what occurred. The Bank merely subordinated its interest to that of appellant. Appellant's interest was not made superior to the interest of any prior lienholder by virtue of the Bank's agreement to subordinate. Only the Bank's position on the priority ladder changed as a result of its subordination. Appellee's lien remained superior to that of appellant and, by virtue of the Bank's decision to subordinate its interest, the appellant's lien also became superior to the Bank's. *McConnell,* 292 S.W.2d at 638.

Appellant's point of error is overruled, and the judgment of the trial court is affirmed.