136 N.J. Super. 461 (1975)
346 A.2d 624
STEVLEE FACTORS, INC., A CORPORATION, PLAINTIFF,
v.
THE STATE OF NEW JERSEY, UNITED STATES FIDELITY AND GUARANTY COMPANY, AND RELIANCE INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 10, 1975.
*462 Mr. Barnett Berr, attorney for plaintiff.
Mr. William F. Hyland, Attorney General of New Jersey (Mr. Edward Schwartz, Deputy Attorney General, appearing).
Mr. Dennis J. Drasco, attorney for defendant Reliance Insurance Company (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. Richard R. Width, Jr., attorney for defendant United States Fidelity and Guaranty Company (Messrs. Lindabury, McCormick & Estabrook, attorneys).
CIOLINO, J.S.C.
The question presented in this matter appears to be one of first impression and reaches the court on the return date of an order to show cause and cross-motions for summary judgment. The issue is whether the interest created by the filing of a security agreement and financing statement in accordance with the Uniform Commercial Code by the assignee of the accounts receivable of a general contractor is superior to the rights of sureties on performance and/or labor and material bonds, which sureties *463 have undertaken or guaranteed completion of the work of a defaulting contractor.
The facts, as distilled from the pleadings, affidavits and statements of counsel made on the record, are undisputed. On March 13, 1973 Dean Electric Co., Inc. (Dean) entered into an arrangement with plaintiff for the factoring of all of its accounts receivable and contract rights in conjunction therewith. At the same time Dean executed and delivered a security agreement and financing statement which were duly filed on March 19, 1973 in the office of the Secretary of State of New Jersey, as required by the Uniform Commercial Code. Pursuant to the provisions of the security agreement, plaintiff advanced to Dean hundreds of thousands of dollars. As of April 1, 1975 there remained due and unpaid to plaintiff the aggregate sum of $600,092.06 representing unpaid advances made in accordance with the aforesaid agreement. At various times between 1972 and 1974 defendant State of New Jersey awarded contracts to Dean for electrical work on State projects pursuant to the public bidding laws. As required by statute, Dean filed with the State a series of surety bonds to secure the payment of materialmen and laborers and to insure the performance of its various contracts. Two of the aforemenioned jobs were bonded by defendant Reliance Insurance Co. (Reliance) and the remainder were bonded by defendant United States Fidelity and Guaranty Company (U.S.F. & G.) In accordance with the contract terms, the State paid out 90% of the monies earned on monthly billings, withholding the balance as per its agreement that the same would be paid upon the completion and acceptance of each job. The aggregate amount of monies still retained by the State on these jobs is $94,878.
The bonds of Reliance predate the filing of the financing agreement, while those of U.S.F. & G. are subsequent thereto. In conjunction with the issuance of the several bonds, each surety procured an assignment from Dean of all *464 monies due or to become due under the respective jobs each had bonded. Defendant bonding companies never filed financing statements with the Secretary of State of New Jersey.
On April 4, 1975 Dean made an assignment for the benefit of creditors of its entire estate, ceased performance of its work and did breach and default under the terms and conditions of the security agreement with plaintiff. Plaintiff made demand upon the State on April 1, 1975 for all monies due and owing from the State to Dean. Of the 13 contracts awarded to Dean, six were totally completed as of April 4, 1975. The remaining seven contracts were uncompleted, and the Division of Building and Construction of the State declared Dean to be in default by reason of the breach resulting from this assignment. The Division notified codefendant sureties to complete the work under the terms of the performance and payment bonds. As an alternative, the notice advised that the State would complete the contracts and back-charge the costs thereof to the sureties. Thereafter, agreements were reached whereby the sureties undertook to complete three projects and to have the remaining four completed by other electrical contractors. In all seven cases the State agreed to apply all unpaid contract balances and retainages in its hands to the completion of the work, and the sureties agreed to contribute the difference between such balances and the total costs of completion. As a result, no monies will remain in the hands of the State.
Plaintiff contends that it, and not defendant State, the codefendant sureties or the completing contractors or suppliers, is entitled to all monies deducted and retained by the State out of the various approved billings submitted by Dean for payment for work, labor and materials furnished prior to default. Plaintiff relies upon the fact that neither surety filed a financing statement pursuant to the Uniform *465 Commercial Code and concludes that defendants have thus failed to qualify as secured creditors under the Code.
Defendant sureties contend that the right to retainage of a surety who completes performance of a public construction contract is superior to the right of an assignee of the contractor notwithstanding the filing by the assignee of the executed security agreement and financing statement.
There being no questions of fact, the issue presented is ripe for disposition by way of summary judgment. R. 4:46-2.
Although there appears to be no New Jersey case which deals with the question raised by this litigation, other jurisdictions have spoken to related problems. In the leading case of Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed. 2d 190 (1962), a dispute arose between the trustees in bankruptcy of a Government contractor and the payment bond surety. The Government had withheld in excess of $87,000 which would have been due the contractor had he paid labor and material claimants. In sustaining the surety's right to the fund and in concluding that the fund was not an asset of the bankrupt's estate, the Supreme Court held that the Government had the right to use the retained fund to pay labor and material claims; that labor and material claimants had a right to be paid out of the fund; that the contractor would have been entitled to the fund had he paid labor and materialmen, and that the surety having paid them became subrogated to the fund. The court further observed:
Traditionally sureties compelled to pay debts for their principals have been demed entitled to reimbursement even without a contractual promise such as the surety had here. And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed. This rule [is] widely applied in this country and generally known as the right of subrogation ... [at pp. 136-137, 83 S.Ct. at p. 235.]
*466 In Memphis and L.R.R. Co. v. Dow, 120 U.S. 287, 301-302, 7 S.Ct. 482, 30 L.Ed. 595 (1887), the court stated;
The right of subrogation is not founded on contract. It is creature of equity; it is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties. [120 U.S. at 301-302, 7 S.Ct. at 489]
The doctrine of subrogation has received wide application by the courts of this State and is referred to as a right highly favored in law. Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162 (1954). A. & B. Auto Stores of Jones St., Inc. v. Newark, 59 N.J. 5 (1971). The sureties' right to the fund rests upon the application of this doctrine. Since the sureties stand in the place of those whose claims they have paid, the funds must be paid to the sureties just as the funds would have gone in the absence of a bond, to the labor and materialmen rather than to the general creditors. Jacobs v. Northeastern Corp., 416 Pa. 417, 206 A.2d 49 (Sup. Ct. 1965). National Shawmut Bank of Boston v. New Amsterdam Cas. Co., Inc., 290 F. Supp. 664 (D. Mass. 1968), aff'd 411 F.2d 843 (1 Cir.1969). It is undisputed that sureties in the instant case filed no financing statements as defined by the Uniform Commercial Code. The issue then presented is whether they were required to do so. I am of the opinion that they were not.
In Jacobs, supra, the receiver of a defaulting contractor for the construction of a state building resisted the petitions of the sureties for distribution to them of funds due under the contract and counterclaimed for retainage on the ground that the sureties had not filed financing statements as required by the Code. There the court held:
None of the purposes or objectives of the Code's filing requirements would be served by holding that a subrogation to the contract balance now due is an assertion of a "security interest" and therefore subject to the filing provisions of Article 9. The contract balance withheld would never have become due and payable to Northeastern *467 (or its receiver or creditors) as long as Northeastern defaulted on its obligation to pay labor and materialmen. Payment of the retained balance became due and available only upon the performance by the sureties of Northeastern's obligation. It is clear that all labor and materials claims must be fully discharged before there is entitlement to the full contract payment. In all respects, the results so far as Northeastern and its creditors are concerned is precisely the same whether the surety satisfied the unpaid laborers and materialmen, or whether the Commonwealth directly pays the claimants out of the retained funds. Surely, the creditors of Northeastern are not adversely effected because the sureties were called upon to, and did, perform their undertaking to pay labor and material claims.
It seems exceedingly clear that in the present suretyship situation, filing is not needed to prevent deceiving or misleading the creditors about the state of the contractor's available assets. * * *
Of basic importance is the general rule of Section 9-102(2) that Article 9 "applies to security interests created by contract." Rights of subrogation, although growing out of a contractual setting and oftimes articulated by the contract, do not depend for their existence on a grant in the contract, but are created by law to avoid injustice. Therefore, subrogation rights are not "security interests" within the meaning of Article 9. The surety's rights of subrogation, having been created by operation of law, are not the usual type of consentual security interests contemplated by the code. [at 428-429]
It is the determination of this court that the Uniform Commercial Code does not impair the surety's equitable right of subrogation. I can find no case which holds that the Code, as enacted, does away with the equitable doctrine of subrogation. "Unless displaced by the particular provisions of this chapter, the principles of law and equity * * * shall supplement its provisions." N.J.S.A. 12A:1-103. I find, further, that the codefendant sureties are subrogated to the claims of the State and/or claims for labor and materials. Their right to the funds retained by the State is thus superior to the claim of plaintiff.
Summary judgment dismissing plaintiff's order to show cause as to the issue herein addressed, is to be entered on behalf of defendants.