164 N.J. Super. 130 (1978)
395 A.2d 897
ROBERT KAPLAN ET AL., PLAINTIFFS-APPELLANTS,
v.
JOHN E. WALKER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 4, 1978.
Decided November 17, 1978.
*132 Before Judges CONFORD, PRESSLER and KING.
Mr. Reuben W. Massarsky, attorney for appellants.
Mr. Martin Newmark, attorney for respondent.
The opinion of the court was delivered by CONFORD, P.J.A.D.
The question presented by this appeal is whether the holder of an unperfected security interest in a motor vehicle can prevent the effectuation of the prima facie priority in the vehicle conferred upon the debtor's equity receiver under the Uniform Commercial Code and the Motor Vehicle Law, by invocation of principles of equitable subrogation. We respond to that question in the affirmative.
In April 1975 defendant John E. Walker owned a 1972 GMC Dumpster which was encumbered by a lien in favor of Newton Trust Company for money loaned. The lien was properly perfected by a filing with the Director of the Division of Motor Vehicles pursuant to N.J.S.A. 39:10-11. The loan having fallen in default to the extent of $4,600, the officers of North Jersey Paving and Construction Co. (North Jersey), including the said Walker, arranged in April 1975 with Commercial Trust Company of New Jersey (Commercial *133 Trust) for a loan to North Jersey with which to pay off the Newton Trust Company debt. The new loan was for $4,922.04, and the proceeds were used to pay off the prior loan. The Newton Trust Company lien was discharged of record but Commercial Trust, although it obtained a note and security agreement executed on behalf of North Jersey, neglected to effect a transfer of the title to North Jersey, to record the lien of Commercial Trust upon the title document for the vehicle, or to record the document with the Director of Motor Vehicles.
On November 6, 1975 O. David Fischer was appointed custodial receiver of the insolvent North Jersey by the Chancery Division. The Commercial Trust note had previously gone into default for $4,880.76. That company then procured from Walker an assignment to it of the bill of sale for the vehicle but the certificate of ownership was never forwarded to the Director of Motor Vehicles for filing. By a prior order in the receivership proceedings title to the dumpster was held to be vested in North Jersey.
The court ordered all of North Jersey's assets to be sold by the receiver at public auction under a stipulation by Commercial Trust that the validity of its lien should be subsequently adjudicated by the court. The vehicle was sold for $10,000, and the court, on motion of the receiver, held that under the Code his interest in the sale proceeds was prior to the lien of Commercial Trust therein. Commercial Trust appeals that determination.
Commercial Trust's primary contention is that under all the circumstances it is entitled to be subrogated to the recorded lien held by Newton Trust Company before it was discharged because Commercial Trust's money was used to pay off the prior lien. It urges that the receiver is in no way unfairly prejudiced by allowing such subrogation or by Commercial Trust's neglect to have its own lien recorded as neither the receiver nor any of the creditors he represents relied upon the state of the title record in their dealings with *134 the debtor. For reasons to be set forth we are in accord with the position thus advanced.
The perfection of liens on motor vehicles in this State is governed by the Motor Vehicle Law, N.J.S.A. 39:10-8; 39:10-9; 39:10-10; 39:10-11. When a new security interest is created in a motor vehicle it is required that its certificate of ownership together with a financing statement be filed with the Division of Motor Vehicles. The Director makes and files a record of the transaction and issues a certificate of ownership recording the name of the secured party and delivers it to him, a copy going to the owner or buyer. N.J.S.A. 39:10-11(C). While a failure to file the lien does not affect the validity of an instrument creating a lien as between the parties thereto, id., (I), compliance with the filing requirements of the statute
* * * shall be in lieu of all filing requirements imposed by chapter 9 of Title 12A of the New Jersey Statutes and shall constitute the perfection of a security interest in the motor vehicle, and the rights and remedies of the debtors and the secured parties in respect to such security interest shall, except as otherwise expressly provided in this chapter, be subject to and governed by chapter 9 of Title 12A of the New Jersey Statutes.
So far as here pertinent, the Uniform Commercial Code provisions applicable in this situation are set forth in N.J.S.A. 12A:9-301 and N.J.S.A. 12A:1-103. The former section provides:
(1) * * * an unperfected security interest is subordinate to the rights of
(b) a person who becomes a lien creditor without knowledge of the security interests and before it is perfected;
(3) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment. Unless all the creditors represented had knowledge of the security interests such a representative of creditors is a lien creditor without *135 knowledge even though he personally has knowledge of the security interest.
Section 12A:1-103 reads:
Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.
Reading the Motor Vehicle Law and § 12A:9-301 together yields a facial result favoring the receiver in this case. Commercial Trust's unperfected lien in the Dumpster would yield to the priority of the receiver as a "lien creditor" without knowledge of the Commercial Trust lien as there is no evidence that any, much less all, of the creditors represented by the receiver had such knowledge. But the inquiry cannot end at that point. Commercial Trust invokes the doctrine of equitable subrogation, and N.J.S.A. 12A:1-103, as indicated above, mandates the supplementation of the Uniform Commercial Code by principles of law and equity unless displaced by any particular provision of the Code. This court has recently suggested, and the uniform holdings elsewhere are in accord, that no particular section of Article 9 of the Code displaces the doctrine of equitable subrogation where the latter is properly invocable as a matter of substantive law. Stevlee Factors, Inc. v. State, 144 N.J. Super. 346 (App. Div. 1976), aff'g o.b. 136 N.J. Super. 461 (Ch. Div. 1975); French Lumber Co. v. Commercial Realty & Finance Co., 346 Mass. 716, 195 N.E.2d 507 (Sup. Jud. Ct. 1964); National Shawmut Bank of Boston v. New Amsterdam Cas. Co., 411 F.2d 843 (1 Cir.1969); In re J.V. Gleason Co., 452 F.2d 1219 (8 Cir.1971); Hillman's Equipment, Inc. v. Central Realty, Inc., 144 Ind. App. 18, 242 N.E.2d 522, 525 (Ct. App. 1969) mod. other gr. 253 Ind. 48, 246 N.E.2d 383 (Sup. Ct. 1969); Bruer v. *136 Sanford Atlantic National Bank, 247 So.2d 764 (Fla. Dist. Ct. 1971); Mid-Continent Cas. Co. v. First National Bank & T. Co., 531 P.2d 1370 (Okl. Sup. Ct. 1975).
French Lumber Co. v. Commercial Realty & Finance Co., supra, is the leading case on the point and is almost on all fours with the instant case. In that case the lumber company had financed the purchase of an automobile through the Ware Trust Company which took back a U.C.C. security agreement and recorded it. The lumber company then pledged its equity in the car to Commercial Realty and executed a security agreement which was recorded. Finally, in financial difficulty, the lumber company arranged to refinance the car with Associates Discount which took and recorded a security agreement and paid off the Ware loan. The Ware security agreement and its discharge were sent to Associates Discount. The latter did not check the records and never knew of Commercial Realty's interest. Associates Discount repossessed the vehicle after default by the lumber company, and litigation ensued between Commercial Realty and Associates Discount over the proceeds of the sale of the car.
The trial judge held in favor of Associates Discount, ruling it was subrogated to the rights of Ware Trust Company which was prior in lien to Commercial Realty. On appeal the Supreme Judicial Court of Massachusetts affirmed. 195 N.E.2d at 510. The court noted that although under the Code Commercial Realty had prima facie priority over Associates Discount, Ware could have assigned its security interest to the latter, which would have given it priority (§ 9-302(2)). Id. at 509. The court held that the same result should obtain under the doctrine of subrogation as the "conduct of Associates did not prejudice Commercial or cause it to change its position." Id. at 510. It went on to say:
The decisions on subrogation discussed above are not superseded by the Uniform Commercial Code. Section 1-103 of the Code provides *137 in part, "Unless displaced by the particular provisions of this chapter, the principles of law and equity * * * shall supplement its provisions." No provisions of the Code purports to affect the fundamental equitable doctrine of subrogation.

[195 N.E.2d at 510]
The French Lumber Co. case is cited and described as "entirely sound" in 1 Gilmore, Security Interests in Personal Property, § 15.3 at 476, n. 7 (1965). See also, Case Comment, 14 De Paul L. Rev. 172 (1964). We take the same view, and we do not find any material difference in the facts of the respective cases. While the defeated lienor in French Lumber was intermediate in time between the subrogor and subrogee, whereas the receivership before us chronologically follows the interest of the subrogee, the receiver and his represented creditors are no more prejudiced by application of subrogation principles here than was Commercial Realty in the French Lumber case. Equity and justice plainly lie with Commercial Trust as against the receiver.
In Stevlee Factors, Inc. v. State, supra, 136 N.J. Super. 461, aff'd 144 N.J. Super. 346, the contest was between a factoring financier of a contractor doing state construction work and bonding companies which had guaranteed the contractor's performance to the State. The factor had a recorded security agreement covering all of the contractor's accounts receivable. The surety companies procured assignments of the contractor's accounts receivable from the State but did not record any financing statements. The contractor defaulted on the state jobs and made an assignment for the benefit of its creditors. The sureties made good on their bonds, and both they and the factor asserted claim against retainages in the hands of the State due the contractor on the contracts. The court held for the bonding companies notwithstanding the prima facie priority of the factor under the Uniform Commercial Code. Finding that the subrogation rights of the sureties to the retained funds were well-established as a matter of equity law, the court, citing N.J. *138 S.A. 12A:1-103, said it could "find no case which holds that the Code, as enacted, does away with the equitable doctrine of subrogation." 136 N.J. Super. at 467. In accord, National Shawmut Bank of Boston v. New Amsterdam Cas. Co., supra, 411 F.2d 843.
Compare Muir v. Jefferson Credit Corp., 108 N.J. Super. 586 (Law Div. 1970), also involving priorities of security interests in a motor vehicle, which held (per Judge now Justice Handler) that in view of N.J.S.A. 12A:1-103 the controversy should be resolved by applying principles of estoppel in pais against the holder of the nominally prior security interest.
As to the underpinning in New Jersey equity law of the rule of subrogation of a refinancing lender to the position of the lender whose lien is discharged by the proceeds of the later loan, there being no prejudice to or justified reliance by a party in adverse interest, there can be no doubt. Capabianco v. Bork, 106 N.J. Super. 429, 432-433 (Ch. Div. 1969), rev'd other grounds, 108 N.J. Super. 356 (App. Div. 1970); Camden Cty. Welfare Bd. v. Federal Dep. Ins. Co., 1 N.J. Super. 532, 551-552 (Ch. Div. 1948); Home Owners Loan Corp. v. Collins, 120 N.J. Eq. 266, 267-268 (Ch. 1936). The last-cited case illustrates the principle that equity will afford subrogation beyond the conventional case of one who, having existing interests in property, pays the debt of another to protect his own rights. The remedy will be extended to one who supplies funds to discharge an old lien when the new security, by fraud or mistake, turns out to be defective. Ibid. The present case fits that doctrine in its aspect of mistake by Commercial Realty.
It is, moreover, the law that in the absence of supervening equities, negligence by the party asserting the right of subrogation will not bar him from relief. Camden Cty. Welfare Bd. v. Federal Dep. Ins. Co., supra, 1 N.J. Super. *139 at 549-551, quoting from Institute B. & L. Ass'n v. Edwards, 81 N.J. Eq. 359, 366, 367 (Ch. 1913).
Judgment reversed.