Michael WEISS and Blanche G. Weiss

v.

ADVEST, INC. and the United States Trust Company of New York

v.

Jacquelyn CUSHMAN.

Civ. A. No. 82–4049.

United States District Court, E.D. Pennsylvania.

March 28, 1985.

See also D.C., 607 F.Supp. 799.

Arthur L. Pressman, Philadelphia, Pa., for Weiss.

Guy A. Cellucci, Philadelphia, Pa., for Advest.

Hayt, Hayt & Landau, Philadelphia, Pa., Clifford J. Chu, Great Neck, N.Y., Scudder G. Stevens, Philadelphia, Pa., of counsel.

Jonathan Wheeler, Philadelphia, Pa., for Cushman.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This action was brought by Michael and Blanche Weiss against defendants Advest, Inc. (Advest), an investment company, and United States Trust Company of New York (U.S. Trust), a bank, seeking damages on the ground that the negligence of either Advest or U.S. Trust proximately caused the failure of U.S. Trust to stop payment on three checks. Advest joined Mrs. Jacquelyn Cushman, the plaintiffs' daughter,

for whose benefit the checks were drawn, as a third-party defendant.

The plaintiffs, customers of Advest, requested that Advest issue three checks totaling $85,000.00 to be charged against a loan in connection with a margin account which was opened for them at Advest. The checks were to be drawn on Advest's account maintained at U.S. Trust. The plaintiffs had agreed to lend the $85,000.00 to their daughter, Jacquelyn Cushman, to enable her to purchase two show horses. Mrs. Cushman had assured the plaintiffs that she would repay the loan in full within a few days. The checks were issued on Friday, September 26, 1980, and were made payable to the two sellers of the show horses. On Monday morning, September 29, 1980, Mrs. Cushman's husband notified Blanche Weiss that her daughter, Mrs. Cushman, would not be financially able to repay the loan. Sometime between 8:55 and 9:00 a.m., Blanche Weiss telephoned Advest and requested that payment on the three checks be stopped. Advest subsequently informed Blanche Weiss that when it communicated the stop payment request to U.S. Trust, U.S. Trust stated that it was too late to stop payment because the checks had already been cashed. In fact, the plaintiffs later learned, none of the checks had been cashed or approved for payment at the time Advest claimed that it had telephoned the stop payment request to U.S. Trust. Payment on the checks was never stopped, and the payees later cashed all three checks.

In the liability segment of a bifurcated trial, the jury answered "yes" to the following interrogatory: "Do you find that it has been proven by a preponderance of evidence that Advest was negligent in failing to communicate the plaintiffs' stop payment request to United States Trust and that Advest's negligence was the proximate cause of the failure to stop payment on the plaintiffs' checks?" In the trial on damages, plaintiffs presented evidence that they had suffered losses in the amount of $45,000.00 on the resale of the show horses, $2,000.00 in attorney's fees, $1,375.00 for insurance on the horses, and $3,665.58

in interest payments on the loan from Advest. The jury awarded plaintiffs the full amount of the damages claimed, $52,030.58.

In a Memorandum and Order dated January 31, 1985, this Court entered its findings of fact and conclusions of law with respect to Advest's equitable third-party claim against Mrs. Cushman. The Court found that Jacquelyn Cushman had been unjustly enriched by Advest's discharge of her indebtedness to her parents, and that Advest was entitled to subrogation in the amount of the balance of the original loan which was outstanding after the horses were resold, $45,000.00. Advest and Mrs. Cushman have filed post-trial motions which are now before this Court.

### I. Advest's Motion for Judgment N.O.V. and/or A New Trial (Weiss v. Advest)

Advest advances three contentions in support of its motion for judgment notwithstanding the verdict and/or a new trial: (1) there was insufficient evidence for the jury to find that Advest was negligent in carrying out the plaintiffs' stop payment order, or this verdict was against the clear weight of the evidence; (2) Advest owed no duty to the plaintiffs to communicate their stop payment order; and (3) the failure to stop payment did not cause harm to the plaintiffs.

### A. Sufficiency of the Evidence

Motions for a new trial require the exercise of discretion by the Court, whose "duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5], at 59–160 (footnote omitted) (2d ed. 1974); *Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 474–75 (3d Cir.1973). The jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand. The Court may not substitute its own judgment for that of the jury merely because the Court may have reached a different conclusion. To grant a motion for judgment n.o.v., the Court must find as a

matter of law that the plaintiff failed to adduce sufficient facts to justify the verdict. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Such a motion "may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A *Moore's, supra*, ¶ 50.07[2], at 50–77 (footnote omitted); *Korvette, supra*, at 474. *Douglas W. Randall, Inc. v. AFA Protective Systems, Inc.*, 516 F.Supp. 1122, 1124 (E.D.Pa.1981), *aff'd mem.* 688 F.2d 820 (3d Cir.1982).

■ The plaintiffs produced evidence which was more than sufficient, under either the JNOV or the new trial standard, to support the jury's verdict that Advest's negligence was the proximate cause of the plaintiffs' losses.

By about 9:20 a.m. on Monday, September 29, 1980, Advest had reported to Blanche Weiss that it had learned from U.S. Trust that it was too late to stop payment on the checks. In fact, the first of the three checks was not presented until 10:16 a.m. that morning. Prior to cashing the check, the U.S. Trust teller ran a status check and learned that no stop payment order had been placed. The check was cashed. The payee on the two other checks deposited them in its account, and they were processed for collection and paid through normal banking channels.

All parties agreed that if Advest had made the call to U.S. Trust between 9:00 and 9:20 a.m., then U.S. Trust would have had sufficient time to effectively stop payment on the checks. Because U.S. Trust did not effectuate a stop payment order, the essential inquiry was whether Advest negligently failed to make the proper phone call to U.S. Trust, or whether U.S. Trust failed to effectuate a properly transmitted stop payment order. Advest presented testimony concerning a chain of communications among its Philadelphia, Hartford, and New York City offices. There was also testimony concerning Ad-

vest's normal procedure for telephoning stop payment orders to U.S. Trust. However, the testimony concerning the actual phone call to U.S. Trust was vague at best. The employee who should have called U.S. Trust had no recollection of ever having made the call. Her co-worker's testimony at trial conflicted with her prior deposition testimony regarding what, if anything, was done to contact U.S. Trust. Further, Advest had no record showing that the call had been made. On the other hand, the U.S. Trust clerk who would normally have handled such a call testified that he never received this call from Advest. U.S. Trust had no record of such a call. The U.S. Trust clerk further testified that if the call had been received by U.S. Trust, not only would there be a record of the call, but payment on the checks would surely have been stopped.

In sum, the testimony presented the jury with a question of credibility: Was the call made by Advest to U.S. Trust at the time Advest claimed? The jury found that Advest had negligently failed to make the call. Since there was ample evidence for the jury to find Advest negligent and that its negligence was the proximate cause of the failure to stop payment, the Court is precluded from granting Advest's motion for JNOV or a new trial on the ground of sufficiency of the evidence.

### B. *Advest's Duty to Mr. and Mrs. Weiss*

Advest contends that the Court erred in its instruction to the jury concerning the issue of whether Advest negligently failed to communicate the plaintiffs' stop payment order to U.S. Trust. The Court charged the jury as follows on the duty of care Advest owed when it undertook to communicate the plaintiffs' stop payment order:

The mere fact that an undesirable result was reached such as in this case that the checks were cashed, or that [this] occurred standing alone, that does not permit you to draw the inference that the result was caused by negligence. Only if

you find a standard of care which one party owed to another party which standard of care was breached can you then find negligence on the part of that party to the action so let's talk first about Advest.

Advest, I think we could refer to them as an investment company. They may have other ways of describing what they are, but they owe a duty to their customer, its customers I should say and who are the customers here? The Weisses. I don't know whether they call them customers or clients, whatever they are, but they owe a duty and what is that duty? It is to conform to a standard of reasonable care in the services it undertakes to provide for its customers. Advest is required to perform services which it undertakes for its customers with reasonable skill, reasonable care, reasonable diligence and what kind of reasonable care and skill? Well, that of a company that holds itself out as an investment broker, and if an investment broker or an investment company fails to comply with the standard of reasonable skill, care and diligence of one practicing such a speciality, it will be liable for any damage to its customers or its clients which proximately results from the breach of that duty.

The plaintiffs bear the burden of proving that Advest failed to use such care to effectively communicate the stop payment request to the bank, in this case United States Trust, and if you find that the defendant Advest was negligent, before you answer yes to that first question, the law says you must also find that their negligence, whatever you find that they failed to do [and] they should have done, was a proximate cause of the failure to stop payment on the checks.

N.T. 360–61.

■ Advest asserts that this charge imposed upon Advest the same standard of care that is owed by an investment company that regularly provides checking and stop payment services. Advest contends that it should not have been judged by this standard because it was acting as a "volunteer" on behalf of the Weisses, in effect going out of its way to provide checking and stop payment services as a completely gratuitous undertaking for these valued customers.

The Court does not agree that the record shows that Advest's undertaking to provide checking and stop payment services for the Weisses was "purely gratuitous." Advest provided such services as an inducement to customers to continue doing business with Advest. Moreover, Advest wrote the checks pursuant to a loan to the Weisses, for which loan Advest charged the Weisses interest. Furthermore, the record shows that Advest had established procedures for transmitting stop payment orders to U.S. Trust. On the basis of the record, there is no question that Advest held itself out as a brokerage business which maintained a checking account at U.S. Trust for the purpose of providing checking services for the benefit of its customers. It was abundantly clear that Advest was not acting as a volunteer. Advest's contention of error in the Court's charge on Advest's duty to the plaintiff is without merit.

### C. *Advest's Negligence as a Proximate Cause of Plaintiff's Losses*

Advest contends that the plaintiffs were obligated, as implied sureties, to answer for the debt of their daughter to the sellers of the show horses, Ronald Beard and Mobile Home Materials (MHM). Because the checks Advest issued were used to extinguish plaintiffs' alleged surety obligation, Advest contends that they have suffered no legal harm as a proximate result of Advest's negligence. Advest raised the same contention in a motion for summary judgment, which this Court denied on the following grounds:

... Advest has not offered any affidavits or other evidentiary material of record in support of its contention that the plaintiffs agreed to act as sureties for Ms. Cushman or agreed to undertake to perform her obligations under her contract with MHM and Beard. The plaintiffs have responded to the motion for summa-

ry judgment with an affidavit in which they aver that they did not enter into any contract of purchase with Beard or MHM, and that they have not entered into any contract with Ms. Cushman, MHM, or Beard to act as sureties for any obligation owed by Ms. Cushman to MHM or Beard. The Court cannot, on the basis of this record, hold that the plaintiffs entered into a binding, non-revocable agreement to assume liability for any debt of Ms. Cushman to MHM or Beard and that Advest is, therefore, entitled to judgment as a matter of law on the plaintiffs' claims against it. Since Advest has failed to carry its burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, Advest's motion for summary judgment will be denied.

Memorandum and Order of March 6, 1984, at 3–4.

■ At trial, Advest introduced no evidence in support of its contention that plaintiffs were sureties or implied sureties on the contract between Mrs. Cushman, Beard and MHM. There was no evidence that Mrs. Weiss intended to assume any obligation on behalf of her daughter. Blanche Weiss testified, "I did not intend to do anything more than make my daughter a loan. I was not purchasing horses." N.T. at 68–69. Mrs. Weiss further testified that she agreed to make the loan to Mrs. Cushman only after her daughter assured her that the loan would be repaid within four days. Mrs. Weiss did not communicate directly with MHM or Beard. There is no basis whatsoever in this record to imply a surety relationship.

■ Finally, the validity of the underlying contract between Mrs. Cushman, Ronald Beard, and MHM is a disputed matter, and one which was not the subject of this lawsuit. The existence, effect, and enforceability of the contract to buy the horses are not relevant to the issue of whether Advest breached a duty of care owing to plaintiffs with respect to their stop pay-

ment order. For all of these reasons, Advest's contention that the plaintiffs suffered no legal harm as a proximate result of Advest's negligence is without merit.

Advest's motions for JNOV and/or a new trial are denied.

## II. *Jacquelyn Cushman's Motions for JNOV and/or a New Trial (Advest v. Cushman)*

On January 31, 1985, the Court filed findings of fact and conclusions of law with respect to Advest's equitable claim for subrogation from Jacquelyn Cushman. The Court found that Mrs. Cushman had been unjustly enriched in the amount of $45,000.00 as a result of Advest's discharge of her indebtedness to her parents. The amount by which Mrs. Cushman had been unjustly enriched was the amount which Mrs. Cushman would still owe her parents, i.e., the balance of the $85,000.00 loan which the Weisses were unable to recover after reselling the horses.

Mrs. Cushman makes what are essentially two arguments in asking this Court to grant judgment notwithstanding the verdict and/or a new trial: (1) that Advest did not discharge any legal obligation on behalf of Jacquelyn Cushman because her contract with the sellers of the horses was unenforceable due to the statute of frauds and void due to fraud and duress; and (2) that equitable considerations preclude a subrogation award in favor of a negligent party.

### A. *Enforceability/Validity of the Contract Between Mrs. Cushman and the Sellers of the Horses*

■ As the Court's Memorandum of January 31, 1985 clearly states, Advest's subrogation award was based upon the discharge of Mrs. Cushman's *loan* obligation *to her parents*. Therefore, Mrs. Cushman's contention that her contract to buy horses from MHM and Beard was unenforceable and void is irrelevant in this law-

suit. Because the Court has repeatedly stated that issues relating to the existence and enforceability of the contract to buy horses are not relevant to the issues surrounding the loan by the Weisses to Mrs. Cushman, no further discussion is necessary.

### B. *Advest's Negligence as a Bar to Subrogation*

Mrs. Cushman contends that this Court erred in awarding subrogation in favor of Advest because she contends the net loss of $45,000 was suffered as a result of Advest's negligence. While it is true that a party seeking equitable relief such as subrogation must behave equitably, Mrs. Cushman's argument on countervailing equities is flawed in several respects.

First, the negligence of Advest is the breach of duty owing to the plaintiffs to effectively communicate their stop payment order. Advest did not owe a duty to Mrs. Cushman. Advest's negligence cannot be said to have caused Mrs. Cushman to incur the $85,000.00 debt to her parents. Moreover, Mrs. Cushman received precisely what she requested from her parents, i.e., payment for the horses. Mrs. Cushman will not be heard to claim that her debt to her parents should be borne by Advest. "[I]n the absence of supervening equities, negligence by the party asserting the right of subrogation will not bar him from relief." *Kaplan v. Walker*, 164 N.J.Super. 130, 395 A.2d 897 (1978) (further citations omitted) (Second lender who negligently failed to perfect lien is subrogated to the rights of original lienholder who was paid with proceeds of second loan).

While all of the other contentions of alleged error raised by the third-party defendant, Jacquelyn Cushman, have not been discussed, each and every allegation of error has been considered. The Court holds that none of them, singly or collectively, is of sufficient substance to merit any further discussion as a basis for granting a new trial in this case.