871 A.2d 759 (2005)
377 N.J. Super. 154
METUCHEN SAVINGS BANK, Plaintiff-Respondent,
v.
Geoffrey PIERINI and Smart Space, Inc., Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 2004.
Decided April 27, 2005.
*761 James A. Woller, Summit, argued the cause for appellants (Pfaltz & Woller, attorneys; Mr. Woller, on the brief).
Samuel C. Inglese, Metuchen, argued the cause for respondent.
Before Judges STERN, COBURN and S.L. REISNER.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant Geoffrey Pierini appeals from a $40,000 judgment[1] entered in favor of plaintiff after a bench trial based on the deposit by Smart Space, Inc. of a $40,000 check jointly payable to Smart Space and Ace Audio-Visual which Ace did not endorse. Pierini is Smart Space's president and sole shareholder.[2] He argues that the trial court improperly held that "the participation theory of tort liability" was applicable, and contends that he cannot be held personally liable for the bank's conversion of the check. He also argues that, even if he can be held liable, the judge should have reduced the judgment based on the bank's comparative negligence. We hold that the evidence permits the finding of conversion by Pierini, that the Uniform Commercial Code (UCC) does not preclude the action under the doctrine of equitable subrogation, and that the principle of comparative negligence is not applicable to reduce the judgment.

I.
Smart Space, defendant's wholly owned corporation, was in the business of constructing work stations for medical professionals and imaging centers for magnetic resonance imaging (MRI), CAT scan and X-ray equipment. Defendant was "running the business" and was responsible for its sales, bidding and technical aspects of the business.
In the spring of 2000, Smart Space was engaged in performing a construction contract for the University of Medicine and Dentistry of New Jersey (UMDNJ) in Scotch Plains. Smart Space subcontracted with Ace for the installation of equipment.
On May 20, 2000 Smart Space sent UMDNJ an application for a progress payment of $45,554.50 pursuant to the construction contract. The payment request was accompanied by Pierini's affidavit which certified that Smart Space owed Ace $78,710. The affidavit included a paragraph which reads:
[A]ll payment or advances received ... by said subcontractor for or in connection with its subcontract work will be held as trust funds to be applied first to the payment in full of the foregoing obligations before using the same for any other purpose.
Because the payment was delayed by virtue of some dispute between UMDNJ and Smart Space, and Ace informed UMDNJ that it was not receiving payment for the work it had performed under the subcontract, Smart Space, Ace and UMDNJ agreed that UMDNJ would write a check for $40,000 payable jointly to Smart Space and Ace, to be charged against the payment due to Smart Space. Pierini wrote a letter "requesting" issuance of the joint check.
*762 Nick Fabbroni, UMDNJ's project manager, testified that the check "should have gone to Ace," but was inadvertently mailed to Smart Space.
George Mulry, Smart Space's office manager, testified that after the check was received at Smart Space's office, he deposited it in Smart Space's account at plaintiff bank. Because Pierini was out of town at the time, Mulry spoke with Smart Space's attorney, Thomas Frey, before depositing the check. Frey had been retained because he was an "accountant/lawyer," and Smart Space was experiencing "financial problems at the time the check came in." Mulry was directed to refer to Frey all issues relating to Ace.
At one point in his testimony, Mulry, who was no longer employed by Smart Space, said he remembered "Jeff [Pierini] giving me the check and asking him about it, and him saying just don't worry about it just get it to deposit it-you know, get it into the bank." Mulry also testified that defendant was "very much hands-on management ... involved in all aspects" of the business and "had a very hands on  to know what was going on in the office."
Frey testified that Mulry described the check to him, and he told Mulry to "complete the deposit ticket and cash the check, and if it is a two-party check the people at the bank will pick it up." Frey further testified that Pierini told him they would be receiving "a two-party check from UMDNJ," but he could not remember Pierini indicating that the check "was supposed to go to Ace." Finally, Frey testified that Mulry told him that he "left a voice mail" message on Pierini's cell phone with respect to the check.
Smart Space had two checking accounts with plaintiff bank, one required Pierini's signature and one did not. The bank accepted the $40,000 check and deposited it into the account requiring Pierini's signature without the endorsement of Ace.
According to Pierini, on Friday, November 17, 2000, the date the check was deposited, he was working on a job site in Ardsley, New York. He worked there over the weekend and thereafter left for vacation. He testified that he was not in the office when the check arrived, did not take part in making the decision to deposit it and "never saw the check." Furthermore, Mulry never "contact[ed]" him about it. Pierini also testified that he could not use his cell phone at the job site because of the magnets at the "imaging centers."
Pierini further testified that he learned that the check had been received and deposited after his vacation was over, following Thanksgiving, about ten days after the check was deposited. At that time he was contacted by Fabbroni of UMDNJ to see if the check was received. He also learned from Mulry that the deposit "was quickly eaten up," and that the funds were no longer available to pay Ace.
Smart Space was never able to collect on its retainage from UMDNJ and could not pay Ace before it filed for bankruptcy on September 27, 2001. Ace is listed as a secured creditor for $81,512.07.
About seven months after the check was deposited, Ace notified plaintiff bank that it was the intended payee on the check, and demanded payment. Ultimately, on the advice of counsel, plaintiff paid the $40,000 to Ace because of its violation of the UCC, and brought this action to recover the funds it paid.
Judge Melvin Gelade, the trial judge, concluded that Pierini was liable for the entire $40,000 payment to Ace because he took no action to assure that the proceeds of the check were paid to Ace even after he learned that the check was wrongly deposited to Smart Space's account and *763 utilized. The judge found that Pierini "clearly was responsible for assuring that the $40,000 check was held in trust for Ace," and that while Mulry had "responsibility to sign small checks ... Pierini signed all checks which were major ... and was the person who controlled the finances of the company." According to the judge:
It is inconceivable that the sole shareholder and person with responsibility for payment of major checks from the corporation wouldn't know through his controller that a check for $40,000, a significant check was deposited, even after inquiry from Mr. Fabbroni.
Therefore, I find that he had knowledge of the fact that the check had been received and that he took no action to assure that that check was  that the proceeds of that check, the $40,000 were paid over to Ace, the company on which  for which the $40,000 was paid.
Finally, the judge concluded:
In this case, the bank stands in the shoes of the  of UMDNJ whose check was wrongfully deposited. The bank was the victim of this improper action and conversion by the defendant, Smart Space, that the person responsible for the conversion was Mr. Pierini, that he certainly aided and assisted his corporation, although he derived no personal benefit from it.
I find that Mr. Pierini, in sum, was not a credible witness. His hesitance in answering questions, his denial of signing the bankruptcy petition, his continuous lapses of memory do not evidence a person trying to be truthful and to give the facts to the finder of fact.

II.
In reviewing a judgment entered in a non-jury case, our courts have held that the findings on which such judgments are based "should not be disturbed unless `... they are so wholly insupportable as to result in a denial of justice,' and that the appellate court should exercise its original fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter." Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474, 483-84, 323 A.2d 495 (1974) (quoting Greenfield v. Dusseault, 60 N.J.Super. 436, 444, 159 A.2d 433 (App.Div.), aff'd o.b., 33 N.J. 78, 161 A.2d 475 (1960)). "Findings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Id. at 484, 323 A.2d 495. "[O]our appellate function is a limited one: we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Fagliarone v. Twp. of No. Bergen, 78 N.J.Super. 154, 155, 188 A.2d 43 (App.Div.1963)). In this connection, credibility is generally for the fact-finder to determine, Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482, 492-95, 126 A.2d 323 (1956), and here the trial judge expressly found that defendant was not credible and converted the check for the use of his corporation.
The Supreme Court has held that
[o]fficers of a corporation are personally liable to one whose money or property has been misappropriated or converted by them to the uses of the corporation, although they derived no personal benefit therefrom and acted merely as agents of the corporation. The underlying reason for this rule is that an officer should not be permitted to escape the consequences of his individual wrongdoing by saying that he acted on behalf of a corporation in which he was interested.

*764 [Hirsch v. Phily, 4 N.J. 408, 416, 73 A.2d 173 (1950).]
See also Charles Bloom & Co. v. Echo Jewelers, 279 N.J.Super. 372, 381, 652 A.2d 1238 (App.Div.1995) (liability for conversion); Sensale v. Applikon Dyeing Printing Corp. 12 N.J.Super. 171, 175, 79 A.2d 316 (App.Div.1951) (internal citations omitted) ("director or officer of a corporation who commits the tort, or who directs the tortious act to be done, or participates or cooperates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort").
We agree with defendant that Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 788 A.2d 268 (2002), made clear that a corporate officer should not be so liable unless there is sufficient evidence of the officer's involvement in the tortious conduct.[3] As the Court said:
the essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort. A predicate to liability is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct.
[Id. at 303, 788 A.2d 268.]
This is essentially what the trial judge found, and there is sufficient evidence in the record to support that finding.

III.
As noted, plaintiff ultimately paid Ace the amount of the check because by depositing the check in the account of Smart Space with a missing endorsement, the bank committed conversion under the UCC, N.J.S.A. 12A:3-420(a), and therefore was liable to Ace. See Sovereign Bank v. United National Bank, 359 N.J.Super. 534, 538, 821 A.2d 87 (App.Div.) (depository bank liable to mortgagee for deposit without endorsement), certif. denied, 177 N.J. 489, 828 A.2d 917 (2003). Pierini asserts that the UCC therefore bars the suit for recovery against him.
We agree with defendant that plaintiff is strictly liable under the UCC for the funds it improperly paid on a check with a missing endorsement. Id. at 539, 821 A.2d 87. N.J.S.A. 12A:3-420(a) and UCC comment 1 thereto make clear that an instrument is converted when it is deposited into the account of one payee without the endorsement of the other and that the "[b]ank is liable [to the other] for conversion of the check."[4]See also N.J.S.A. 12A:3-110(d). The bank's liability, however, is to the non-signing payee (or any collecting banks in the chain), not to the depositing wrongdoer. See N.J.S.A. 12A:3-420 and UCC Comment 1. See also Mandelbaum v. P & D Printing Corp., 279 N.J.Super. 427, 432, 652 A.2d 1266 (App.Div.1995) ("Payment of a draft or check with a missing endorsement is the equivalent of payment of a forged instrument and *765 constitutes conversion against the non-signing payee"); N.J.S.A. 12A:3-406. However, we have not found any authority in the UCC or elsewhere to support the proposition that the depository bank cannot recover from the payee who converts and misappropriates the check and deposits it without the other payee's signature.
We, therefore, conclude that plaintiff may recover from Pierini the sums he converted for which plaintiff had to pay the rightful payee. See N.J.S.A. 12A:1-103 ("principles of law and equity," including those governing misrepresentation and fraud, "supplement" provisions of the UCC unless it provides otherwise). As a result, we further conclude that plaintiff could avail itself of the doctrine of equitable subrogation against Pierini inasmuch as those rights have not been abrogated by the UCC. Kaplan v. Walker, 164 N.J.Super. 130, 136-37, 395 A.2d 897 (App.Div.1978); Stevlee Factors, Inc. v. State, 136 N.J.Super. 461, 467, 346 A.2d 624 (Ch.Div.1975), aff'd o.b., 144 N.J.Super. 346, 365 A.2d 713 (App.Div.1976); (finding "no case which holds that the Code, as enacted, does away with the equitable doctrine of subrogation"). See also Dunn v. Praiss, 139 N.J. 564, 578, 656 A.2d 413 (1995) (noting that under New Jersey law a bank "absolutely liable under a statute may seek contribution from a negligent attorney"); Humberto Decorators, Inc. v. Plaza Nat'l Bank, 180 N.J.Super. 170, 174, 434 A.2d 618 (App.Div.1981) (applying general principles of common law to find conversion under the Code); Tormo v. Yormark, 398 F.Supp. 1159, 1180-81 (D.N.J.1975) (bank paying on forged endorsement may recover from person liable for conversion despite its own liability).
Defendant nevertheless asserts that he is entitled to an offset of the judgment by virtue of plaintiff's comparative negligence. We disagree.
The Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to 5.8, was designed "to replace the former pro rata liability of joint tortfeasors ... with the obligation of each tortfeasor to pay damages in accordance with its own adjudicated percentage of fault." Johnson v. Am. Homestead Mortgage Corp., 306 N.J.Super. 429, 436, 703 A.2d 984 (App.Div.1997). In apportioning liability, "the factfinder should compare the fault of all parties whose negligence was a proximate cause of the plaintiff's injuries." Campione v. Soden, 150 N.J. 163, 177, 695 A.2d 1364 (1997). Where a plaintiff's actions contribute to an injury negligently caused by a defendant, comparative negligence principles typically apply "[u]nless public policy requires otherwise." Zepf v. Hilton Hotel Casino, 346 N.J.Super. 6, 23, 786 A.2d 154 (App.Div.2001). Here, there is a public policy reason to prohibit the defense because the account holder converted the funds. Attempts to convert must be deterred, and the defense should not apply where it would deprive the plaintiff bank of the money it was obligated to pay, and paid in full, as a result of the intentional wrongdoing of its depositor. Cf. County Concrete Corp. v. Smith, 317 N.J.Super. 50, 62, 721 A.2d 34 (App.Div.1998) (drawee bank entitled to set off the amount of a replacement check against the amount of the converted check).[5]
Our conclusion is consistent with Travelers Indem. Co. v. Good, 325 N.J.Super. 16, *766 21-26, 737 A.2d 690 (App.Div.1999), which held that the UCC provides for a comparative negligence analysis when the bank honors forged instruments drawn on its customer's account. In Travelers we considered comparative negligence principles in the context of a subrogation action by the insurance company of a law firm against the law firm's bookkeeper, the bank handling the firm's trust account and the payees on checks forged by the bookkeeper. Travelers Indemnity, supra, 325 N.J.Super. at 18-19, 737 A.2d 690. There the bookkeeper forged an authorized signature on numerous checks totaling $76,975, the bank paid on a number of them and charged the firm's trust account, and the carrier compensated the firm for the loss. Id. at 19, 737 A.2d 690. One of the issues was the extent to which the bank had used "ordinary care" in processing and paying the forged checks as that term appears in N.J.S.A. 12A:3-406(a), which provides in part as follows:
A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
That section "established a comparative negligence test in which losses are allocated between the customer and the bank if each has failed to comply with its respective duties." Id. at 21, 737 A.2d 690.[6]
In Travelers, Judge Cuff comprehensively detailed how the different sections of the statute might apply given different scenarios of the bank's level of care, saying in part that "[i]f the customer is precluded but proves the bank failed to exercise ordinary care in paying the item and that failure substantially contributed to the loss, a comparative negligence test applies in which the loss is allocated between the customer and the bank." Id. at 23, 737 A.2d 690, citing N.J.S.A. 12A:4-406(e) ("[c]ustomer's duty to discover and report unauthorized signature or alteration"). In Travelers, the customer was not the wrongdoer.
Even if plaintiff is deemed to fall within the first clause of N.J.S.A. 12A:3-406(a)[7] as a person "failing to exercise ordinary care" contributing to alteration or forgery, Pierini is not "a person who, in good faith, pays the instrument or takes it for value or for collection," N.J.S.A. 12A:3-406(a), and Travelers does not apply. N.J.S.A. 12A:3-406 was not intended to cover the case of a bank mistakenly accepting a two-payee check and depositing it into the account of one of the payees. N.J.S.A. 12A:3-406 expressly applies to "an alteration of an instrument or to the making of a forged signature on an instrument." N.J.S.A. 12A:3-406(a). Plaintiff's acceptance from Pierini of a check missing an endorsement constitutes neither. The UCC comments following N.J.S.A. 12A:3-406 make clear that section 3-406 was intended to address the improper signature *767 or change upon the instrument itself, either by way of unauthorized alteration, or by forgery. See N.J.S.A. 12A:3-406 and UCC comment 3 to N.J.S.A. 12A:3-406. In fact, as noted above, the commentary to N.J.S.A. 12A:3-420 expressly addresses the type of situation at issue here, see N.J.S.A. 12A:3-420(a) ("[c]onversion of instrument"), and speaks more broadly than N.J.S.A. 12A:3-406 in terms of an instrument "taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument." We therefore conclude that, unlike the forgery case involved in Travelers governed by N.J.S.A. 12A:3-406, there is no preclusion preventing the bank's recovery in the type of case with which we deal, which is governed by N.J.S.A. 12A:3-420. Accordingly, we find no basis in the UCC to limit plaintiff's recovery or preclude its recovery by way of equitable subrogation.
We affirm the judgment because plaintiff could assert its claim as a matter of equitable subrogation and defendant may not assert comparative negligence as a defense.
NOTES
[1] The judgment added interest from the date of the filing of the complaint and costs.
[2] Smart Space filed a voluntary petition under chapter 7 of the Bankruptcy Code, and is not the subject of a judgment in this case. There is no cross-appeal from the denial of plaintiff's application for counsel fees.
[3] In Saltiel the duty arose out of a contractual obligation, and there was no personal liability.
[4] N.J.S.A. 12A:3-420(a) provides:

The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.
[N.J.S.A. 12A:3-420(a).]
[5] A court's use of the phrase "contributory negligence" as opposed to "comparative negligence" in this context is insignificant because of our courts' continuing tendency ... to include the doctrine of comparative fault under the heading `contributory negligence.'" Mahoney, New Jersey Comparative Fault and Liability Apportionment 7 (Gann ed.2003) (citing Tobia v. Cooper Hosp. University Med. Ctr., 136 N.J. 335, 341, 643 A.2d 1 (1994)).
[6] N.J.S.A. 12A:3-406(b) addresses allocation of the loss between the person precluded and the one asserting the preclusion where the one asserting the preclusion fails to exercise ordinary care and that failure substantially contributes to the loss. N.J.S.A. 12A:3-406(c) assigns burdens of proof.
[7] As noted above, we recognize that, for purposes of N.J.S.A. 12A:3-420, there is no difference between payment of an instrument based on a forged endorsement and on no endorsement at all. See Sovereign Bank, supra, 359 N.J.Super. at 538, 821 A.2d 87 (citing Mandelbaum, supra, 279 N.J.Super. at 432, 652 A.2d 1266); Interchange State Bank v. Veglia, 286 N.J.Super. 164, 185-86, 668 A.2d 465 (App.Div.1995), certif. denied, 144 N.J. 377, 676 A.2d 1092 (1996).