**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4651-18T4

GIORDANO DECANDIA, a/k/a
JORDAN DECANIDIA,

     Plaintiff-Appellant,

v.

ANTHONY T. RINALDI, LLC
d/b/a THE RINALDI GROUP, a
New Jersey Limited Liability
Company, and ANTHONY
RINALDI (as an individual and
member),

     Defendants/Third-Party
     Plaintiffs-Respondents,

v.

ELAINE DECANDIA,

     Third-Party Defendant.
_____

     Submitted September 14, 2020 – Decided  October 5, 2020

     Before Judges Hoffman and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000124-17.

Spinella Law Group, attorneys for appellant (Jack T. Spinella and Jessica M. Wilde, on the briefs).

Baron Samson LLP, attorneys for respondents (Andrew Samson, of counsel and on the brief).

PER CURIAM

Plaintiff appeals from the May 14, 2019 Chancery Division order entered in favor of defendants, Anthony T. Rinaldi, LLC (the LLC), and its owner, Anthony Rinaldi. In 2017, plaintiff sued defendants, alleging they wrongfully deprived him of his ownership interest in the LLC, without compensation. Following a bench trial, the trial judge denied plaintiff's claims for relief and granted defendants' request for judgement on two counterclaims. Having considered the parties' contentions in light of the record and the applicable principles of law, we affirm in part, and vacate in part. Specifically, we vacate only the trial judge's determination that plaintiff's conduct constituted a breach of the statutory duty of loyalty set forth in N.J.S.A. 42:2C-39.

I

We derive the following facts from the trial record. The LLC engages in construction management and general contracting services, primarily in New

A-4651-18T4

Jersey and New York. Rinaldi formed the LLC in 2003. Plaintiff began working for the LLC in 2011, signing a limited liability operating agreement on February 14, 2011 (the 2011 Agreement). This document amended the prior operating agreement, which had designated Rinaldi "the sole Member and Chief Executive Manager of the [LLC]." The 2011 Agreement provided that Rinaldi "has elected to admit one additional Member, [p]laintiff," but also stated that Rinaldi "shall continue to serve[] as the [LLC]'s only Manager and Chief Executive Manager . . . ." Addressing management of the LLC, the 2011 Agreement provided:

> Members that are not Managers shall take no part whatsoever in the control, management, direction, or operation of the [LLC]'s affairs and shall have no power to bind the [LLC]. The Managers may from time to time seek advice from the Members, but they need not accept such advice, and at all times the Managers shall have the exclusive right to control and manage the [LLC].

The 2011 Agreement included, as Exhibit C, a schedule labeled "Capital Contributions," which allocated ninety percent ownership to Rinaldi and ten percent ownership to plaintiff. The schedule included a note clarifying that plaintiff's "ownership interest is performance based rather than through capital contributions, and . . . shall be increased to, as incentive, [twenty percent] of the net profits made on the business procured by him for the [LLC]." Plaintiff also

A-4651-18T4

received a corresponding certificate denoting his ten percent membership interest.

Rinaldi testified that when he hired plaintiff, the parties agreed plaintiff would receive compensation in the form of a salary and "[ten] percent profit sharing." According to Rinaldi, profit-sharing is a prevalent and customary compensation mechanism within the commercial construction industry. The LLC's comptroller likewise testified at trial that the parties advised her of plaintiff's non-equity profit-sharing arrangement in 2011. The comptroller also testified that she herself had a twenty percent profit-sharing arrangement with the LLC and that plaintiff received the same deal, just with a lesser share.

On September 25, 2013, the parties signed an amended operating agreement (the 2013 Agreement), adding two other members and allocating to them similar percentage interests in the LLC. The Capital Contributions schedule to the 2013 Agreement changed plaintiff's percentage in the LLC from ten percent to twenty percent and noted plaintiff's "ownership interest is performance based rather than through capital contribution, based upon his abilities to procure and bring in business to the [LLC]." Plaintiff also received a corresponding certificate denoting his twenty percent membership interest, and the LLC voided the previously-issued certificate.

In 2015, plaintiff and Rinaldi began negotiating a buy-sell agreement that would enable either Rinaldi or plaintiff to buy out the other's wife, in the event one of them died. Rinaldi testified that the purpose of the buy-sell agreement was to make plaintiff a twenty percent equity partner in the LLC. The parties met to discuss the proposed agreement in July 2015. The initial draft stated plaintiff would own twenty percent of the common stock of the LLC upon signing the agreement. Plaintiff rejected these terms, believing he already owned twenty percent of the LLC and thus the agreement granted him no additional equity.

On October 19, 2015, the parties met to review a revised draft of the buy-sell agreement. Rinaldi and two other employees who attended the meeting all testified that the purpose of the meeting was to discuss making plaintiff an equity partner. The LLC's accountant, who was present at the meeting, testified that the parties discussed the tax implications and financial liability associated with becoming an equity partner. According to the accountant, plaintiff expressed interest in "profits, not taxes" and wanted to avoid any personal liability on the LLC's bonds.

The discussions at this meeting then turned to other liabilities associated with ownership. Rinaldi disclosed to plaintiff that the LLC was currently under

5

criminal investigation by the Manhattan District Attorney's office, after the New York Department of Buildings concluded that numerous safety violations caused a death at a LLC construction site. Rinaldi and the LLC's comptroller, both present at this meeting, testified that upon hearing of the safety violations and criminal investigation, plaintiff grew concerned that his certificate might expose him to criminal liability for the construction site death. In response, Rinaldi told plaintiff that if the potential liability worried him, he should resign and return his certificate to the LLC's lawyer. Plaintiff told Rinaldi that he did not have the certificate with him at that time, but he would return it to the LLC's lawyer.

Shortly after this meeting, plaintiff provided his membership certificate to the LLC's attorney; however, at trial, plaintiff insisted that he did so because he believed turning over the certificate was necessary to execute the buy-sell agreement. Plaintiff claimed he believed the parties would resolve their differences over the agreement's terms and dropped off the certificate so it could be properly notated and attached to the agreement. Plaintiff did not sign the certificate or provide an explanatory writing. The parties never finalized the buy-sell agreement, and plaintiff never reclaimed his certificate. Following the surrender of his certificate, plaintiff received bonuses instead of the profit-sharing compensation he received in the past.

Plaintiff and Rinaldi's relationship soured in March 2017, leading Rinaldi to terminate plaintiff's employment with the LLC. According to plaintiff, on March 21, 2017, his last day working at the LLC, Rinaldi and another employee met with plaintiff and assured him they would "work out a buyout of [plaintiff']'s membership interest in the [LLC]." Rinaldi denied making such a statement to plaintiff.

In 2016, the year before he left the LLC, plaintiff began discussions with McGowan Builders (McGowan), a direct competitor of the LLC. McGowan eventually offered plaintiff a job, and he signed an employment agreement with the firm on April 28, 2017. Notably, in the employment agreement, plaintiff confirmed he was not a "partner, stockholder, director, manager [or] member" in "any business that competes with the business of" McGowan. Even before signing this agreement, on his last day of employment with the LLC, plaintiff forwarded to his wife a proposed budget prepared by the LLC as part of a bid to provide construction management services to a firm called Silverback Properties (Silverback). Plaintiff's wife then sent this budget to McGowan, which later submitted its own competing bid to Silverback. Plaintiff thereafter met with Silverback, unsuccessfully attempting to persuade the firm to accept McGowan's bid.

On September 15, 2017, plaintiff filed a complaint against the LLC and Rinaldi, seeking various forms of relief, including a declaration that plaintiff had a twenty-percent ownership interest in the LLC, the appointment of a custodian to protect plaintiff's ownership interest, an order requiring defendants to purchase plaintiff's ownership interest, and an award of damages and attorneys' fees. Plaintiff based his claims for relief on the following legal theories: 1) minority member oppression, under N.J.S.A. 42:2C-48; 2) breach of fiduciary duties; and 3) piercing the corporate veil. Defendants filed an answer, which included affirmative defenses and counterclaims, as well as a third-party complaint against plaintiff's wife. The counterclaims alleged 1) breach of the common law duty of employee loyalty; 2) breach of duty of loyalty, pursuant to N.J.S.A. 42:2C-39; and 3) defamation. The claims against plaintiff's wife were dismissed before trial.

The trial judge held a bench trial over various dates in February and March 2019. On May 14, 2019, the judge issued a twenty-one-page written opinion accompanied by an order denying all of plaintiff's requests for relief. Additionally, the order granted two of defendants' counterclaims, finding plaintiff breached both the common law duty of employee loyalty as well as the

statutory duty of loyalty set forth in N.J.S.A. 42:2C-39; however, the order denied defendants' defamation counterclaim.

In the accompanying written decision, after discussing at length the evidence and testimony presented at trial, the judge concluded that plaintiff did not have an ownership stake in the LLC. Rather, the judge determined that plaintiff was merely an employee who received additional compensation through a profit-sharing arrangement. The judge found that plaintiff's act of turning over his certificates to the LLC's attorney "demonstrated his express will to withdraw as a member," thus effecting his disassociation from the LLC under N.J.S.A. 42:2C-46.

Next, the trial judge invoked the doctrine of "unclean hands," as the basis for rejecting plaintiff's claims of minority member oppression, breach of fiduciary loyalty, and shareholder liability. The judge found that plaintiff sending the LLC's confidential information to his new employer placed him "before the court with unclean hands," and therefore he could not recover in equity. The judge also noted that she has the discretion to invoke the unclean hands doctrine sua sponte.

Finally, addressing defendants' counterclaims, the trial judge explained that plaintiff transmitting the LLC's proposed budget for the Silverback bid to

McGowan constituted a breach of the common law duty of employee loyalty as well as the statutory duty of loyalty owed by LLC members, under N.J.S.A. 42:2C-39; however, the judge found insufficient proof to award damages to defendants on their counterclaims; as a result, she awarded "nominal damages of $1.00." The judge also rejected defendants' counterclaim for defamation, citing the absence of any "direct testimony of defamation."

This appeal followed.

## II

"Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). "Findings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974). Moreover, we only disturb the credibility determinations of the trial judge if "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Metuchen Sav. Bank v. Pierini, 377 N.J. Super. 154, 161 (App. Div. 2005)(citation and internal quotation marks omitted). Moreover, we

defer to the trial court's credibility determinations because it "'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015)(quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

Plaintiff first argues the trial judge committed legal error in finding that he "disassociated himself" from the LLC by turning over his shares to the LLC's attorney. Plaintiff argues that, pursuant to N.J.S.A. 12A:8-304(c), the mere delivery of his certificate to the LLC's attorney, without plaintiff indorsing the certificate, cannot constitute legally competent evidence of his intent to transfer his shares back to the LLC.

Initially, we note it is not clear that N.J.S.A. 12A:8-304, which concerns security certificates, is applicable to plaintiff's return of his profit-sharing documents. Regardless, plaintiff's argument ignores section (d) of the statute, which states, "against a transferor, a transfer is complete upon delivery." N.J.S.A. 12A:8-304(d). Thus, plaintiff's delivery of the certificate to the LLC's attorney completed the transfer of his profit-sharing interest, notwithstanding the lack of indorsement. Pursuant to section (d), the absence of a necessary indorsement simply prevents a transferee from becoming a "protected purchaser." N.J.S.A. 12A:8-303.

While plaintiff's unendorsed surrender of his certificate prevented the LLC from attaining protected purchaser status and allows plaintiff to challenge the validity of the transfer, it did not render the transfer invalid. The trial judge, after assessing the credibility of witnesses and weighing the evidence presented, found that plaintiff's surrender of his certificate "demonstrated his express will to withdraw as a member." Under N.J.S.A. 42:2C-46(a), a person becomes dissociated as a member from a limited liability company when "[t]he company has notice of the person's express will to withdraw as a member." N.J.S.A. 42:2C-46(a). Therefore, plaintiff's surrender of his shares disassociated him from the LLC and validly transferred his profit-sharing interest back to the LLC.

The trial judge's decision turned on two key findings. First, the judge found that plaintiff did not have an ownership interest in the LLC. While the operating agreement and certificate denoted plaintiff owned a twenty-percent membership interest, the judge found this referred to plaintiff's arrangement to receive a twenty percent share of the business he brought in. The judge acknowledged there was evidence supporting both positions, but ultimately, the judge's assessment of witness testimony and credibility revealed that plaintiff relinquished whatever ownership interest he may have held in the LLC. Specifically, the judge relied on the testimony of other employees, who stated

plaintiff wanted profits instead of the increased tax burden and potential criminal and financial liability associated with ownership. The judge also relied on the fact that plaintiff did not indicate he had an ownership interest when filing his taxes and balked at the idea of personally guaranteeing the LLC's credit and bonds. Further, the operating agreement precluded plaintiff's participation in management of the LLC and in fact, plaintiff was not involved in the management. The judge also found plausible Rinaldi's explanation that he referred to plaintiff as a partner to third parties only to enhance the LLC's stature. We defer to the judge's finding here as it was supported by substantial evidence and based on her assessment of the credibility of the evidence presented.

The trial judge's second critical finding was that plaintiff's act of turning over his certificates to the LLC's attorney "demonstrated his express will to withdraw as a member." Under N.J.S.A. 42:2C-46(a), such an act constitutes an event causing a person to be "dissociated as a member from a limited liability company." Thus, the judge's conclusion that plaintiff dissociated from the LLC turned on this factual finding. In her decision, the judge explained how her assessment of the evidence and witness credibility led her to make this finding:

> Shortly after the October meeting [plaintiff] dropped off his shares at the office of the corporate attorney. He says this was to enable the shares to be notated and attached to the proposed agreement. At this point in

> time there was no agreement. Rinaldi believes he did it due to concerns regarding the criminal investigation. While his actions could be consistent with either point of view, the court finds the fact that [plaintiff] left no instructions and did not again inquire about the shares strongly supports the point of view that he was turning his shares in. He also represented to McGowan that he had no ownership in Rinaldi. He received a bonus, not a distribution in December 2015. The court finds [plaintiff] disassociated himself from the [LLC] as of the date he dropped the shares off. This demonstrated his express will to withdraw as a member.

Again, we defer to the credibility determinations of the trial judge in assessing the evidence and testimony presented. There was substantial evidence supporting the finding that plaintiff expressed his intent to dissociate as a member of the LLC, including testimony showing plaintiff sought to avoid criminal liability, testimony that plaintiff turned in his membership certificate after Rinaldi suggested he do so to effect his resignation, and evidence showing plaintiff did not receive profit sharing compensation after he surrendered his certificates. We discern no basis to disturb the judge's finding. We conclude the trial judge's determination that plaintiff was not a part-owner of the LLC was supported by substantial, credible evidence.

Plaintiff next argues that, even if he did dissociate from the LLC when he turned in his membership certificate, he did not lose his "economic rights" and thus remains entitled to receive compensation for the fair value of his ownership

14

interest. As previously noted, the trial judge properly found that plaintiff did not have an ownership interest in the LLC. Because plaintiff retained no compensable ownership interest upon his dissociation from the LLC, his argument fails.

Plaintiff further argues the trial judge misapplied the unclean hands doctrine, which precluded the consideration of his equitable claims. We disagree.

In order to recover in equity, a party "must be with clean hands." Heuer v. Heuer, 152 N.J. 226, 238 (1998). The unclean hands doctrine provides, "a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Faustin v. Lewis, 85 N.J. 507, 511 (1981). However, there are limits to the doctrine's application. Heuer, 152 N.J. at 238. For example, the unclean hands doctrine "should not be used as punishment but to further the advancement of right and justice." Pellitteri v. Pellitteri, 266 N.J. Super. 56, 65 (App. Div. 1993)(citing Heritage Bank, N.A. v. Ruh, 191 N.J. Super. 53, 71-72 (Ch. Div. 1983)). The doctrine:

> [D]oes not repel all sinners from courts of equity, nor does it apply to every unconscientious act or inequitable conduct on the part of the complainants. The inequity which deprives a suitor of a right to justice in a court of equity is not general iniquitous conduct unconnected with the act of the defendant which the complaining party states

A-4651-18T4

> as his ground or cause of action; but it must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought.
>
> [Heuer, 152 N.J. at 238 (quoting Neubeck v. Neubeck, 94 N.J. Eq. 167, 170 (E. & A. 1922)).]

"'It is the effect of the inequitable conduct on the total transaction which is determinative whether the maxim shall or shall not be applied.'" Heuer, 152 N.J. at 238 (quoting Untermann v. Untermann, 19 N.J. 507, 518 (1955)).

Applying the doctrine of unclean hands is within the court's discretion. Borough of Princeton v. Bd. of Chosen Freeholders, 169 N.J. 135, 158 (2001). Trial courts are permitted to invoke the doctrine sua sponte in order to further the interests of justice and public policy. Trautwein v. Bozzo, 39 N.J. Super. 267, 268 (App. Div. 1956).

Plaintiff asserts the court's application of the unclean hands doctrine was inappropriate because there was no correlation between his wrongful conduct and the underlying controversy, and because defendants suffered no injury.

Here, the plaintiff's wrongful conduct was towards defendants, in that he misappropriated the LLC's confidential information and provided it to a direct competitor. This was not wrongful conduct towards an unrelated third party. Instead, plaintiff's conduct derived directly from his employment relationship with defendants and from their underlying employment dispute. Plaintiff also

contends defendants suffered no injury since McGowan failed to win the contract despite having access to the LLC's confidential information while preparing its competing bid. This argument lacks merit. The act of plaintiff misappropriating the LLC's confidential information constituted a breach of loyalty and an injury, notwithstanding the absence of provable damages. The trial court recognized this in its award of nominal damages to defendants. We are satisfied the trial judge properly applied the unclean hands doctrine in this case.

Finally, plaintiff challenges the trial court's determination that plaintiff breached the statutory duty of loyalty, contrary to N.J.S.A. 42:2C-39, in granting defendants' second counterclaim. Specifically, plaintiff asserts the statute only imposes a duty of loyalty upon members of member-managed LLCs and on managers of manager-managed LLCs. Plaintiff argues that he was a member of a manager-managed LLC and therefore, the statute did not apply to him. We agree, as a plain reading of the statute indicates that it applies to members of "member-managed" limited liability companies. N.J.S.A. 42:2C-39(a).

The limited liability operating agreement governing plaintiff's employment with the LLC clearly stated it was a manager-managed LLC and explicitly provided that Rinaldi was "the [LLC]'s only Manager and Chief

Executive Manager." The agreement further stated, "Members that are not Managers shall take no part whatsoever in the control, management, direction, or operation of the [LLC]'s affairs and shall have no power to bind the LLC." The trial record clearly established that plaintiff was not involved in the day-to-day management of the LLC. The facts clearly showed the LLC was a manager-managed LLC and plaintiff was only a member. Therefore, N.J.S.A. 42:2C-39 imposed no duty upon plaintiff; as a result, we vacate the judge's determination that plaintiff breached this statutory duty. While we vacate that portion of the judge's order, we note that she did not award defendants any damages for the statutory violation; in all other respects, we affirm the order under review.

Affirmed in part and vacated in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4651-18T4